## FRANK P. HEMEN *v.* LYDIA K. KAMAKAIA.

QUESTIONS RESERVED BY CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 18, 1896.　　　DECIDED DECEMBER 15, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

A testator devised certain lands to his wife, son and several daughters respectively, with a proviso that "if perchance any of my heirs mentioned above shall die without a child (this however does not apply to my wife), no part of his or her share mentioned in this document shall pass if he or she wills it away to another, but it shall descend to his or her brother or sisters shown by this document, and their descendants, and shall be divided equally according to their respective rights." Other parts of the will referring to these devises in a general way are set forth in the opinion of the court. One of the daughters, L., survived the testator, married and had a child; this child married and also had a child, and then died; this last mentioned child afterwards died. L. conveyed to H. in fee simple a part of the land devised to her. Held:

1. The indefinite devise to L., even if presumed, as at common law, to carry an estate for life only, is shown by the context to carry an estate in fee simple—defeasible by the proviso upon death without a child.

2. The words "die without a child" refer to death at any time, not merely to death within the lifetime of the testator, and, therefore, L. did not take an indefeasible estate merely by her surviving the testator; in other words, the devise over was not by way of substitution.

3. The clause against willing does not imply a power to convey. It was not intended as a partial restraint upon the power of alienation, inconsistent with the devise of the fee, but as explaining to some extent the clause with which it is coupled, that is, the devise over.

4. The word "descend" is used in the sense of "go" or "pass" by will, not in the sense of "descend by law."

5. The words "without a child," even if presumed, as at common law, to mean an indefinite failure of issue, are shown by the context to mean a definite failure of issue, and therefore L.'s fee simple would not be cut down to an estate tail, even if estates tail existed in this country.

6. The words "without a child" in this case mean "without a child born," that is, "without having had a child," not "without a child then living or surviving," and, therefore, L.'s estate became indefeasible upon the birth of her child, although the child afterwards died during L.'s tifetime.

7. An indefeasible fee simple therefore passed by L.'s deed to H.

OPINION OF THE COURT BY FREAR, J.

This is an action for breach of covenants of seisin, and of right to sell and convey in fee simple, contained in a deed made November 24, 1894, by the defendant to the plaintiff, of a portion of the land described as Lot 1, R. P. 1741, L. C. A. 734, to Jona Piikoi. It is alleged that the defendant was not seized, and had no right to sell and convey, in fee simple, because she had only a life estate or at most an estate tail, under the will of her father, said Jona Piikoi. The main question at issue, raised by demurrer, is, what estate did the defendant take under her father's will, a copy of which is made a part of the declaration?

The will is in the Hawaiian language and the following are -translations of such portions as are material to the case: "My

property shall be divided among my heirs as follows:" Then follow five articles in which certain real and personal property is devised and bequeathed to the testator's wife, his son, each of his two daughters, one of whom is the defendant, and his foster-daughter, respectively. These articles are framed in much the same way. The one devising the land in question to the defendant reads thus: "3rd.—To my daughter, Lydia Kekahili, the house-lot at Peleula, Kuleana 734, Apana 1, Royal Patent 1741, based upon award of the Land Commission, and the Ili Aina at Kaneohe, O., Mikiola by name, and one carriage, and the two driving horses, Pakula and Laepuu by name, and the three riding horses, Keoni, Hikaka, and Kikalanoha by name." After these devises and bequests the testator continues: "6th.—Since I have divided as in the words above all the property among my heirs, therefore the things upon the land of each of them, and the houses thereon, and the other things appertaining to the property divided, in order that no one shall be embarrassed, these things shall go with the things belonging to them according to their shares, if not given to another by this document." The 7th article is immaterial. The article which has principally given rise to this controversy is: "8th.—Here also is this, if perchance any of my heirs mentioned above shall die without a child (this however does not apply to my wife) no part of his or her share mentioned in this document shall pass if he or she wills it away to another; but it shall descend to his or her brother or sisters shown by this document, and their descendants, and shall be divided equally according to their respective rights." The will contains three other articles providing respectively for the guardianship of the daughters during their minority, the disposition of the residue, if any, of the estate, and the nomination of executors.

It is alleged in the declaration that the defendant survived the testator and married and had lawful issue, a son; that this son married and had lawful issue, a son, and then died; and that thereafter this last mentioned son also died, leaving his mother surviving him and now living.

The case comes here on the following questions reserved by the Circuit Judge:

1.   What interest did Lydia K. Kamakaia, *nee* Piikoi, take in the real estate devised to her by the will of her father, Jona Piikoi?

2.   What estate has the said Lydia K. Kamakaia now in the said lands under the circumstances set forth in the pleadings?

3.   Was an estate in perpetuity created in said real estate by said will, and, if so, was its effect to vest the legal estate absolutely in Lydia K. Kamakaia?

4.   Is the fee simple title in said land vested in Frank P. Hemen by the deed of Lydia K. Kamakaia, filed in this case?

5.   In case the said property is vested in Lydia K. Kamakaia in estate tail, can she bar the entail by a proper deed for that purpose?

6.   If the estate of Lydia K. Kamakaia is one for life only in whom will the same vest upon her death?

The plaintiff contends that the estate devised to the defendant by the 3rd article of the will is an estate for life only, since the devise is simply to her, without words of inheritance; that at common law this life estate would be enlarged to an estate tail by the limitation over in the 8th article in case of her death without a child, that is, as contended, without issue, because these words imply that the child or issue, if any, should take the remainder, and the rule in Shelley's Case unites the life estate and the remainder into an estate tail in the first taker; but that since the rule in Shelley's Case is not law here (*Thurston v. Allen,* 8 Haw. 392) the estates remain separate, that is, a life estate in the first taker with remainder in fee in the child or issue, and that, if, as he contends, the words "without a child" mean an indefinite failure or extinction of issue at any time, however remote, the devise over is an executory devise void for remoteness; or, if the 3rd article confers a fee simple, the 8th cuts it down to a fee tail, because it implies that the inheritance was intended to be restricted to the heirs of the body, and that in such

case the entail could not be barred by a conveyance in fee by the first taker even after the birth of a child, because this is prohibited by the statute *de donis*, passed in the reign of Edward I., which, it is contended, is a part of the common law in force here.

The defendant contends that the words "die without a child" in the 8th article mean "die without a child during the lifetime of the testator," in other words, that the devise over is merely by way of substitution in case the defendant should die without a child before the testator died, and that, since she survived the testator, she took an indefeasible fee; or that, if the words "die without a child" mean "die at any time without a child, so as to make the estate defeasible in case the defendant should survive the testator and afterwards die without a child, her estate became indefeasible upon her surviving and having a child, although the child afterwards died in her lifetime; or, if the fee simple was cut down to an estate tail, that by the common law prior to the statute *de donis*, the entail could be barred after the birth of a child by a conveyance in fee by the first taker, or, that this can be done here even if the statute *de donis* is considered a part of the common law, the deed taking the place of the antiquated fine or common recovery; also, that an unrestricted power to convey is implied by the restriction on the power to will.

We are of the opinion that the estate devised by the third paragraph is an estate in fee simple. It is everywhere held that words of inheritance are not necessary in a will to carry the fee. An indefinite devise, such as the one in question, may be either for life or in fee. It would naturally be understood to be in fee, for according to popular notion the gift of a thing carries all the interest in it and not merely a life interest. At common law, however, such a devise was presumed to be for life, but this presumption grew up under conditions no longer existing and has been generally recognized as technical and subversive of the actual intention of the testator in most cases.

It has, accordingly, been abrogated by statute in England and most of the United States, where now the presumption is in favor of a fee. Even at common law courts were always quick to seize upon other expressions in a will to overcome the presumption and carry out the real intention of the testator. We find ample in the will before us to rebut such presumption, if made. It is well settled that the word "estate" carries the fee, in the absence of an intention shown to the contrary, and that the word "property" is equivalent to "estate." In the present case, the testator begins: *"My property* (kuu mau waiwai) shall be divided among my heirs as follows," and in the 6th article he speaks as having divided *"all the property* (na waiwai a pau) among my heirs," and in the 10th article, "all *other property* of mine (na waiwai e ae o'u) *if any* * * * shall be divided equally among my heirs and my wife." In *Kahanaiki v. Kohala Sugar Co.,* 6 Haw. 694, similar words (ko'u waiwai) were held to carry a fee simple. The word translated "heirs" (hooilina), found all through the will, though not strictly synonymous with the English word "heirs," would also seem to indicate, though slightly, that more than a life estate was intended. The words "other property, *if any"* in the 10th article, and the fact that in this article the residue, if any, is given to the same persons to whom the specific devises are made, also show an intention that the specific devises should carry the whole estate in the lands so devised. The testator would hardly have made specific devises for life and then devise the *remainder, if any,* as a part of the residue, if any, to the same persons. Again, in the 8th article, the exception of the wife implies that she had been given the fee, that is, that no restriction was intended to be laid upon her power of alienation, and therefore, since the specific devises to the children were made in language similar to that to the wife in the first part of the will, that the children also had been given the fee and that they might freely dispose of it except in so far as restricted by this article.

Having decided that the 3rd article was intended to carry a

fee simple, the next question is, how is this affected by the 8th article? And first, do the words "die without a child" mean "die without a child during the testator's lifetime," so as to give an indefeasible fee simple to the devisee in case she should survive the testator, with a devise over only by way of subsituation in case she should die without a child in the lifetime of the testator? In our opinion, the testator meant "die at any time," not "within his lifetime." This is the natural meaning of the words "if any of my heirs shall die" without other words limiting the death to a particular period. It is true that at common law, if the words were simply "if any of my heirs shall die" and the words "without a child" were not added, the word "die" would in the absence of any other words indicating a different intention, be construed to mean "die within the testator's lifetime," but this would be only in order to avoid imputing to the testator the absurdity of making the devise over contingent upon an event that was sure to happen, since every one is sure to die sooner or later, but may or may not die within the testator's lifetime. But where the contingency of death is coupled with another contingency, as "without a child," there is no necessity for restricting the natural meaning of the words, for "death without a child" may or may not happen, whether in the lifetime of the testator or afterwards. And so by the common law the words "die without a child" or equivalent words, are held not to be restricted to death within the testator's lifetime. In this particular case, this construction is rendered necessary by the restriction against the devisee's willing the property away in case of her death without a child, for, why should she be prohibited from willing it away in case of her death without a child during the testator's lifetime, since she could not will it away during that period in any event, because she would not become entitled until after the testator's death. Indeed the testator probably contemplated the death of the devisee without a child as likely to occur, if at all, only after his own death, for at the date of the will the devisee was an unmarried minor and he himself

was apparently conscious that he was near his end, for he recites in the will that he was weak of body and he died shortly afterwards. We therefore hold that the words "die without a child" are not restricted to death during the testator's lifetime, and consequently that the defendant did not take an indefeasible fee merely because she survived the testator, and that the devise over was not intended to be merely by way of substitution.

We may add here that the restraint in the 8th article against willing does not imply a power to convey. This clause was evidently intended, not as a partial restraint upon alienation inconsistent with the devise of the fee, in which case it would be void, but as explanatory of the clause with which it is coupled, namely, the clause creating the devise over. The two clauses must be read together and as expressing together the intention that upon the death of the first devisee without a child her estate should determine and the fee should then go to her brother and sisters. Also the word "descend" (ili) in the devise over is not used in the sense of "descend by law" but in the sense of "pass" or "go" by will.

Having now decided that the defendant did not take an indefeasible fee simple merely because she survived the testator, the next question is, whether the 8th article left the devise a defeasible fee simple, with an executory devise over, or cut down the fee simple to an estate tail, with a remainder over. The solution of this question depends in part upon whether the words "without a child" mean a definite failure of issue, that is, a failure of the devisee's issue during her lifetime or at her death, or an indefinite failure of issue, that is, a failure or extinction of her issue, that is, lineal descendants, at any time, whether during her life, at her death, or at any time afterwards. The state of the law upon this subject is very much as it is upon the subject of an indefinite devise above considered. The words "without issue" may mean a definite or an indefinite failure of issue. In a case like the present they would naturally be taken to mean a definite failure, for the popular idea cer-

tainly is that the words "without issue" in the phrase "die without issue" refer to the time of death. For, how could one now living die without issue say a thousand years from now? It is a strained construction to hold that the words "if A die without issue" mean "if A die at one time and his issue become extinct long afterwards." Nevertheless, at common law, not only was the word "child" presumed to be synonymous with "issue," but the words "die without issue" were presumed to refer to an indefinite failure of issue. This presumption, like the presumption of a life estate in the case of an indefinite devise, grew up under conditions that no longer exist and was arbitrary and in most cases defeated the real intention of the testator. It has now been altered, to comply with the testator's real intention, by statute in England and many of the United States, and by judicial decision in a number of other States. But even at common law the courts held that the presumption might easily be overcome by other expressions in the will, and we find enough in the will before us to overcome such presumption, if made. It might be overcome more easily in the case of "children" than in the case of "issue," and in the case of "a child" than in the case of "children." The restraint against the devisee's willing the property away in case of her death without issue coupled as it is with the devise over in such event, indicates that the devise over is to take effect, if at all, at her death, for this, the restraining clause, refers to her personal act, namely, her willing away,—an act that could be performed, if at all, only in her lifetime and that could become effective, if at all, only at her death. The words are "ke *kauoha* aku *oia*," that is, "if *she wills* away." We may add that this is not the simple case of "a devise to A and her heirs, but, if A dies without issue, then over," in which case the word "heirs" may mean either "heirs general" or "heirs of the body," and is held to have been used in the latter sense by implication from the subsequent reference to "issue," and thus to create an estate tail, but it is the case of an indefinite devise shown

by other parts of the will to have been intended as a fee simple with the power of alienation and other incidents of a fee simple except in case of death without issue. The clause against willing, while it does not imply a power to convey in case of death without issue, does imply both a power to convey and a power to will, as incidents of a fee simple estate, in case of death with issue. Since, therefore, the will as a whole shows an intention to confer a fee simple and the particular language in the 8th article shows that the words "without a child" in that article were intended to mean a definite failure of issue, we hold that that article does not cut down to a fee tail the fee simple devised in the 3rd article, in other words, that the testator gave defendant a fee simple defeasible upon her death without issue, and an executory devise over in that event to her brother and sisters.

The question remains, whether in view of the facts of this case, the fee simple is still defeasible or did it become indefeasible by the birth of a child, notwithstanding the fact that the child died in the devisee's lifetime? The solution of this question depends upon whether the words "without a child" mean "without a child then living or surviving" or "without a child born," that is, "without having had a child." The words are capable of either of these meanings. At first thought they might perhaps most naturally be taken in the first sense,—as descriptive of the status of the devisee at the particular time of the event (her death) with which they are associated. And yet they might also very naturally be taken, in the sense of "childless,"—as descriptive of her in a more general way as belonging to that class of persons who have not had children,— just as the word "unmarried" is held to more naturally refer to spinsters than to widows. There are several considerations which favor this construction. In the first place, the construction should be favored that would shorten the period during which the property would be tied up. If the estate should not become indefeasible, notwithstanding the birth of a child,

until the death of the devisee, as would be the case if the words
in question mean "without a child then living," the property
would be tied up during the whole of the devisee's life.  Again,
since, as we have found, the testator's intention, in case the
devisee should not die without a child, was not that the child
should take the estate after the mother but that the fee simple in
the mother should be indefeasible, is it not probable that he in-
tended the estate to become indefeasible in her as soon as she
should attain the status of motherhood?  Again, since nothing
is given to the child, but everything to the first taker, to remain
in her or go over upon the contingency of her dying with or
without a child, and yet since the benefit of the child also was
obviously in the testator's mind, is it not reasonable to suppose
that he meant to place the first taker in a position to make
suitable provision for the child as soon as it should be born,—
which provision might be required in the life of the parent as
well as after her death?  The consequence of holding that the
estate would become indefeasible in the mother only upon the
child's surviving her, would be this; she would be without the
power to make provision for the child during her lifetime
except out of the income (for there would always be a possi-
bility that the child might die first) and yet she would have
the power, in case the child should survive her, to dispose of
the whole property as she pleased without regard to the inter-
ests of the child.  Again, this daughter and her child, if any,
were evidently the first objects of the testator's bounty as to the
property devised to her.  There was no intention to give her
only a life estate or to tie her hands as to this property except
in case she should die without a child.  He apparently had
confidence that she would do what was best for her child, if
any.  He probably did not contemplate that the child might
die before the parent.  He did not attempt to provide for every
contingency that might happen.  And, suppose the child had
grown up, married and had a child and then died, would the
testator have desired the property to go over to the brother

and sisters of the devisee rather than that the devisee should have the whole estate so that she might make provision for her grandchild? Upon reasoning somewhat similar to the foregoing, the words "without having children" were construed as "not having had children" in *Weakley v. Rugg*, 7 T. R. 322, and *Bell v. Phyn*, 7 Ves. 453b. Some courts, it is true, draw a distinction between the phrases "without a child or children" and "without having a child or children," but it is questionable whether such distinction is well founded. The words "without a child" in the phrase "die without a child" being capable of either meaning, that is, "without a child surviving" or "without a child born," there is, as shown above, at least considerable reason for holding that they were intended in the latter sense. And this is perhaps made practically certain by Hawaiian usage. For, Hawaiians do not distinguish between living and deceased children so clearly as do English people. If asked, "how many children have you?" a Hawaiian would ordinarily reply the entire number that he had had whether alive or deceased, and a second question would be required to ascertain how many he had living or surviving. In *Booth v. Baker, ante*, p. 543, we have an instance in which words identical with those now in question (ina e make * * * me ke keiki ole, that is, if * * * shall die without a child) were used in the sense of "not having had a child," as shown unmistakably by other parts of the will. Since therefore the fee simple was to be defeated only in the event of the devisee's death without a child, that is, without having had a child, and since she had a child, the event of death without a child has become impossible, and the fee simple has become indefeasible.

The reserved questions are answered as follows:

1. Lydia K. Kamakaia took a defeasible estate in fee simple in the lands devised to her by the will of her father, Jona Piikoi.

2. The said Lydia K. Kamakaia now has (except in so far as she has disposed thereof) an indefeasible estate in fee simple in said lands under the circumstances set forth in the pleadings.

3. No estate was created in contravention of the rule against perpetuities.

4. So far as shown by the pleadings, the fee simple title in a portion of said lands is vested in Frank P. Hemen by the deed of Lydia K. Kamakaia, filed in this case.

5 and 6. These questions are answered by the answer to the first question.

The case is remitted to the Circuit Court for such further proceedings as may be proper.

*Kinney & Ballou* and *J. M. Monsarrat,* for the plaintiff.
*Magoon & Edings,* for the defendant.