THE HONOLULU INVESTMENT CO., Limited, *v.* HELEN
ROWLAND, THOMAS METCALF, J. RODRIGUEZ,
FRANCISCO JOSE, ANTONIO dos SANTOS, DO-
MIAO de MEDEIROS, A. J. FARIA, CHUN HUNG,
YEE CHEW FAN, JAMES PROSSER, EMMA
M. NAKUINA, JOHN WRIGHT, LYDIA ROW-
LAND WRIGHT, FREDA KLEMME, CHRISTIANA
GOMES, J. S. EMERSON, WILLIAM O. SMITH, Trus-
tee, and FRANK GODFREY, Trustee for Thomas Met-
calf.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 23, 1902.　　　DECIDED JUNE 6, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

T. devised certain land to F.'s "children lawfully begotten". F. had a
daughter, E., begotten and born out of wedlock. E.'s father and
mother intermarried after her birth. *Held*, that E. was not a law-
fully begotten child of F., within the meaning of the will, even
though legitimated by the statute (C. L., §1876) on the marriage
of the parents, and therefore did not take under that clause of the
will.

OPINION OF THE COURT BY PERRY, J.

Action to quiet title. Theophilus Metcalf devised certain real
estate to his son Frank, "to have and to hold to my said son,
during the time of his natural life," adding, in his will: "And
it is my further will that if my said son shall decease, leaving
children lawfully begotten, that the property by this instrument

to him bequeathed shall descend to such heirs, but if he shall decease, not leaving lawfully begotten children as aforesaid, then the property so bequeathed to my said son shall be equally divided between my daughters Helen and Julia, should they both survive him, or to the survivor of them." The son Frank died leaving surviving him a son, Thomas, born in wedlock, and a daughter, Emma, conceived and born out of wedlock. Some time after Emma's birth her father and mother intermarried. The plaintiff acquired by deed all of the right, title and interest, if any, which Emma obtained under the will in and to the land referred to. The circuit court, trial by jury having been waived, gave judgment for the plaintiff for an undivided one-half of the land.

Two questions only, of those presented by the bills of exceptions, were argued. On behalf of the defendant Emma Nakuina, it is contended that by the clauses above quoted the testator gave to his son Frank an estate tail. We cannot so construe the will. Frank was intended to take a life estate only; the language used clearly expresses that intention. "Children," as used here, is a word of purchase and not of limitation, designating the persons who were to take after Frank's death, not from or through him by descent but under the will. The word "descend" is used in the sense of "go"; it is clearly used with that meaning in another clause of the will wherein the testator provides that certain property devised to a daughter shall, in the event of her dying not leaving heirs lawfully born, "descend" to the Trustees of Oahu College.

The other question is whether or not Emma took under the will as one of Frank's children "lawfully begotten". In our opinion, she did not. She was begotten at a time and under circumstances which undoubtedly made her conception unlawful. It is true that our statute (Section 1876, C. L.) provides that "all children born out of wedlock, are hereby declared legitimate on the marriage of the parents with each other and are entitled to the same rights as those born in wedlock," but this inheriting quality the statute gives to such issue in spite of the

fact that they are unlawfully begotten and born. It *declares* them legitimate and gives them the same rights possessed by those *born* legitimate but nevertheless recognizes and does not seek to alter the facts of nature. In the absence of a will, children *declared* legitimate by statute inherit equally with those *born* legitimate, but a testator may by express provision exclude all but those who are *begotten* or *born* lawfully. The words "lawfully begotten" in their ordinary acceptation describe facts as they exist at the time of conception. There is nothing in the will to indicate that they were used in any different sense. The testator's intent to confine his gifts to those only who were born in lawful wedlock is consistently shown throughout the will. In one instance, the devise is to a daughter "and to the heirs of her body, *in lawful wedlock born*," with a provision for the event of her dying, "not leaving heirs *lawfully born*"; in another, if certain daughters decease "leaving *lawfully born* children", such children are to take; and in still another the provision is as to the disposition of property in case of the death of either of two daughters "leaving children *born in lawful wedlock.*"

In the *Appeal of Edwards*, 108 Pa. St. 283, 289, 290, a case similar to that at bar, the court held that a son born out of lawful wedlock, though legitimated by an Act of Assembly, could not take by purchase under a deed to "lawfully begotten children." The facts sufficiently appear from the following quotation from the opinion: "The persons who take the fund in court for distribution must do so as designated grantees under the deed from Elizabeth Wistar to Israel W. Morris in trust. The ultimate beneficiaries of the fee are there described as 'lawfully begotten children or grandchildren' of Richard M. Wistar, who was the son of Elizabeth Wistar and the *cestui que trust* for life of the property which produced the fund in court. The question is whether the appellee Thomas M. Wistar is a 'lawfully begotten' child of Richard M. Wistar. He is the illegitimate son of Richard M. Wistar and was legitimated by an Act of Assembly passed in April, 1853. There is no doubt that by force of this Act he became the heir of Richard M. Wistar and would be

18–D

capable of inheriting from him to the same extent as if he had been born in lawful wedlock. Under several of our decisions he could take under the description of 'issue', 'lawful issue', or 'person entitled under the intestate laws': *Killam v. Killam*, 3 Wr. 120; *Miller's Appeal*, 2 P. F. S. 113; *McGunnigle v. McKee*, 27 Id., 81; *Johnson's Appeal*, 7 Norr. 346. But the persons who take this fund do not take title from Richard M. Wistar. They must found their title upon the deed from Elizabeth Wistar to Israel W. Morris. It was she who created the estate and by the deed in question. She gave the property to Morris in trust for her son Richard M. Wistar during his life, and after his death to his 'lawfully begotten' children or grandchildren. We must regard this language as *descriptio personarum*. It describes the fact which shall characterize the ultimate beneficiaries. They must be 'lawfully begotten.' It is not enough that they have a legal status, that they may have inheritable blood from their father, that they may be his 'heirs', or his 'lawful issue.' Unless they are lawfully begotten children they do not fill the essential requirement of the deed of trust. It is undoubtedly true that Thomas M. Wistar was not 'lawfully begotten' by his father. It is equally true that it is not possible for any legislature to make that a fact which is not a fact. Legislation can confer legitimacy upon illegitimates, but it can not alter the facts of nature. In *Schafer v. Eneu*, 4 P. F. S. 304, we applied this doctrine strictly, holding that a devise over to 'children', after a life estate to their mother, would not embrace children who were adopted by the life tenant. We see no difference in principle between that case and this. Both are governed by the same idea. The ultimate takers of the estate do not derive their title by descent from their parent, but by purchase from the original grantor. In view of that consideration they must correspond to the description contained in the deed. Where that description defines merely a legal status it includes all who hold the status, but where it defines a fact, those only can claim its inclusion who conform to the fact. Thomas M.

Wistar is not within that category in this case, and therefore is not entitled to the fund."

The cases cited to the contrary are distinguishable by reason of the fact that the language used to describe the grantees or devisees is different in each instance from that in the case at bar. In *Ives v. McNicoll*, 59 O. St. 402, the devise was to M. for the term of his natural life and at his death to the "heirs of his body." M.'s heirs were ascertainable only at his death and the court properly held that a legitimated child, made capable, by law, of inheriting at M.'s death, was an heir. So, also, of *McGunnigle v. McKee*, 77 Pa. St. 81, where the devise was to T. and his "heirs". In *Carroll v. Carroll*, 20 Tex. 732, and *Gates v. Siebert*, 157 Mo. 254, the word used was "children." In the absence of indications to the contrary in the will, there was room for the construction that this meant all children whether born legitimate or made so by law. In *Miller's Appeal*, 52 Pa. St. 113, the description was "lawful issue" and the court held that a legitimated daughter was lawful issue within the meaning of the will, because, though not so by nature, she was made so by the supreme legislative power of the state. What the court would have decided had the testator limited the class to children lawfully *begotten*, does not appear.

The exceptions are sustained and a new trial ordered.

*Robertson & Wilder* for plaintiff.

*Andrews, Peters & Andrade* for defendant Emma M. Nakuina.

*Kinney, Ballou & McClanahan* for defendants Helen Rowland and James Prosser.