Simerson v. Simerson, 20 Haw. 57.

# MARY N. SIMERSON *v.* WILLIAM KUKAILANI SIMERSON, A MINOR, BY HIS GUARDIAN, W. K. SIMERSON.

## SUBMISSION ON AGREED FACTS.

ARGUED JANUARY 31, 1910.                    DECIDED MARCH 2, 1910.

### HARTWELL, C.J., PERRY AND DE BOLT, JJ.

DEEDS—*estates—condition in restraint of alienation.*

> A deed conveying "absolutely" to A "and her heirs forever" reserving all rights and income for lives of grantor and wife upon condition that grantee "cannot" sell or mortgage and that after her death the land "is to descend" to her son and any after born children "and their heirs and assigns forever" gives the grantee the fee which is not reduced to a life estate by the condition against alienation.

OPINION OF THE COURT BY HARTWELL, C. J.

(Perry, J., dissenting.)

The following are the agreed facts: July 29, 1907, William Kalaehao conveyed to his daughter Mary Nanea Simerson the land situate on Nuuanu street in Honolulu, described in R. P. 3589, by deed of conveyance executed and acknowledged by himself and his wife, of which the following is a translation:

"Know all men by these presents that I, William Kalaehao, of Kapalamà, Honolulu, Island of Oahu, Territory of Hawaii, for the sum of One Dollar received in my hands from Mary Nanea Simerson, of the same place, and for my affection for her, by this I acknowledge the receipt of said Dollar, therefore I do make and by this give, sell and convey absolutely unto Mary Nanea Simerson aforesaid, and her heirs forever that certain piece of land situate on Nuuanu street, Honolulu aforesaid, and being the piece of land described in Royal Patent 3589, L. C. A. 2937, and conveyed to me by deed dated December 27, 1899, and by deed dated May 27, 1905, and recorded in the Registry Office in Book 203, page 278, and in Book 272, page 106.

"Reserving unto myself, William Kalachao aforesaid, and to my wife Kealoha Kalachao, all rights privileges and yearly receipts from the land aforesaid so long as we are alive, that is should either one of us die, then the right is to be continued to the survivor.

"This conveyance is under the conditions mentioned below, viz.:

"One.    That Mary Nanea Simerson aforesaid cannot sell this land nor mortgage it;

"Two.    She is to pay the mortgage existing upon the said land, and all expenses pertaining to the release of said mortgage.

"To Have and To Hold the said piece of land, with all rights and benefits thereon, to Mary Nanea Simerson aforesaid immediately after our death;

"And after her death, the said land is to descend to her child now being, William Kukailani Simerson, and other children which she may have hereafter, and to their heirs and assigns forever.

"And I, Kealoha Kalachao, the wife of William Kalachao aforesaid, for the sum of One Dollar paid by Mary Nanea Simerson, by this document release and relinquish forever all my dower in the within piece or parcel of land aforesaid to Mary Nanea Simerson aforesaid for her heirs and assigns forever.

"In Witness Whereof we have hereunto set our hands and seals this 29th day of July, A. D. 1907."

The grantor and his wife have since died. The grantee has not paid the mortgage and has no other child than William, named in the conveyance, whose guardian joins the submission. The questions submitted are (1) Did the grantee take under the deed an absolute fee simple subject to the mortgage and life estate reserved to the grantor and his wife, and (2) is the fee now in the grantee's son William subject to a life estate only in the mother, the grantee, as well as to the terms of the mortgage and rights of after born children.

The plaintiff claims that the fee is granted to her by the words of conveyance and description of the persons taking the

land viz.: "I do make and by this give, sell and convey absolutely unto Mary Nanea Simerson aforesaid, and her heirs forever;" and that the subsequent prohibition of her selling or mortgaging the estate thus granted is void as well by the rule that later provisions in a deed are disregarded when repugnant to those which precede as because a restraint upon alienation of a fee is invalid at common law.

The defendant claims that the grantee has only a life estate with remainder in fee to the grandchild, subject to rights of after born children; that this is the clear intention of the deed, taken as a whole, and is consistent with the common law rule invoked by the plaintiff if it is law here, but that if the rule would otherwise require, then that it is not in force in Hawaii, since the court looks at the whole instrument to find its intention and gives effect to the intention when found.

There is an inconsistency which the law cannot recognize between ownership of land in fee simple and inability of the owner to sell, mortgage, lease or devise the land at will, hence restraints upon its alienation, if attempted to be made in conveying a fee, are declared to be void. This is not only on the ground of public policy that land titles shall be marketable but from the impossibility of granting to the same person at the same time two entirely distinct estates, for they can neither be created nor held by him. If one holds an estate for years or for his life and also the fee the former estates merge in the fee. As for the public policy, it is impossible to say whether the grantee's child will survive her or that other children will be born and survive her, and, if they do not, to say who would be the heirs. This shows the difficulty of making a title out of a life estate with remainder over if it were for the interest of the mother and child to sell or mortgage this land.

The plaintiff inferentially has merely a life estate if the prohibition against selling or mortgaging can be reconciled with the previous words, which in the absence of the prohibition

would undoubtedly convey the fee. A conveyance to A and his heirs forever, provided that A shall not sell, gives A the fee although the intention of the grantor to give him a life estate only and not the fee is as clear as if fully expressed. As a matter of common sense it is not to be supposed that the grantor here intended that his daughter and her heirs should have the land forever, but that her heirs should not have it, and yet the only thing to do is either to nullify the words giving the fee or the words which restrain the alienation.

The words of grant give the grantee a fee which by the reservation of the rights, privileges and yearly receipts to the grantor and his wife takes effect upon their death. The sale of the land thus granted in fee cannot be restrained by the subsequent condition, nor is the fee reduced to a life estate because of the condition against a sale or mortgage. The habendum, if regarded as defining a life estate only, cannot defeat the estate previously granted. *New York Indians* v. *U. S.,* 170 U. S. 1, 20.

This result follows from the rule that effective conveyancing words of grant are not defeated by irreconcilable conditions afterwards expressed or by limitations in the habendum, and from the law that restraints upon alienation are invalid. While "courts should always seek for the actual intent of the parties and give effect to that intent when found, whatever the form of the instrument" (*Maker* v. *Lazell,* 83 Me. 562), this proposition "is hedged about by some positive rules of law which the parties must heed, if they would effectuate their intent, or avoid consequences they did not intend. Muniments of title especially are guarded by positive rules of law to secure their certainty, precision and permanency. If, in the effort to ascertain the real intent of parties, one of these rules is encountered it must control, for no positive rule of law can be lawfully violated in the search for intent. * * * There is one rule pertaining to the construction of deeds, as ancient, general and rigorous as any other. It is the rule that a grantor cannot

destroy his own grant, however much he may modify it or load it with conditions,—the rule that, having once granted an es-tate in his deed, no subsequent clause even in the same deed can operate to nullify it. 11 Bacon's Ab. 665. Shep. Touch. 79, 102. We do not find that this rule has ever been disre-garded or even seriously questioned by courts. We find it often stated, approved, and sometimes made a rule of decision." Ib. 565. *Higgins* v. *Wasgatt,* 34 Me. 305, cited by the defen-dant, holds that a widow took a life estate under a deed from her son in which he "demised, granted and farm-let" to her and her husband, "their heirs, executors, administrators and assigns, to have and to hold the same for and during their nat-ural lives," the grantor covenanting to keep the farm in repair while in his possession, and the parties for themselves and their respective heirs, executors and administrators agreeing to fulfill a certain contract, and the grantor stipulating that the grantee should have a home during her life with him. It was urged that "if lands are given in the premises to one and his heirs, habendum to him for life, the habendum is void because it is repugnant to what is already expressed in the premises," and "had the grant been in the premises to A and his heirs, haben-dum to him for life, the habendum would be utterly void; for an estate of inheritance is vested in him before the haben-dum comes; and shall not afterwards be taken away or de-vested by it." The court said, "Taking the whole instru-ment into consideration, there can be no doubt that it was the intention of the parties that Higgins and his wife should take a life estate." The case must either be regard-ed as overruled in the case cited from 83 Me. or else not in conflict with it. In *Redstrake* v. *Townsend,* 39 N. J. L. 372, the court held that the deed under discussion would "cre-ate a fee tail special at the common law," the premises being conveyed to the grantees, their heirs and assigns, habendum to the grantees "and to their heirs, male and female, the lineal

issue of the marriage," so that "while in the premises of this deed a fee is conveyed, the habendum clause measures out but a fee tail." The statute, however, having abolished fee tails "in every form in which they might arise" the habendum was necessarily disregarded.

Another case cited by the defendant is *Bodine's Administrators* v. *Arthur,* 91 Ky. 53, holding that if the granting clause and the habendum are repugnant and "it appears from the whole conveyance and attendant circumstances that the grantor intended the habendum to enlarge, restrict and repugn the conveyance clause, the habendum must control," and is "to be considered as an addendum or proviso to the conveyancing clause which by a well settled rule of construction must control the conveyancing clause or premises, even to the extent of destroying the effect of the same." There were no words conveying the 'fee other than may be implied in "granted, bargained and sold." *Beecher* v. *Hicks,* 75 Tenn. 207, was a conveyance to the grantee, habendum unto her for her sole and separate use and to her children. The court said, "At common law the language of this deed would not have passed the fee for want of words of inheritance," and "if the habendum was repugnant to the premises either in the quantity of the thing conveyed, the estate or the grantee, it was void," but that the habendum might determine the estate granted "if the estate given was not immediate but by way of remainder," and held that the deed created a life estate, remainder to children in fee.

In *Horn* v. *Broyles* (Tenn.), 62 S. W. 297, a deed to the grantor's two sons declaring his intention that if either should die without issue the survivor should have the land, it was held that the latter clause did not restrict the meaning of the first and therefore did not pass the title to the survivor, the other son having died leaving issue. The court, while recognizing the general common law of conditions repugnant to a grant, approved *Beecher* v. *Hicks,* supra, and *Fogarty* v. *Stack,* 86

Tenn. 610, in ruling that "The true rule is to look at the whole instrument without reference to formal divisions in order to ascertain the intention of the parties and not to permit the antique technicalities to override such intention," and that the habendum might "determine the estate granted, enlarge, explain or qualify the premises," and name a new grantee if the estate given was not immediate but by way of remainder. In *Powers* v. *Hibbard,* 114 Mich. 533 (72 N. W. 339), there was a deed granting the right to water power "to the extent of three runs of mill stones," and providing that "run of mill stones" was "equivalent to fifteen horse power and no more." A habendum provided for division of water power by the grantor into two classes and that none of the runs in the first class should have prior "use of water in low stages." The runs granted were of the first class. It was held that the habendum controlled, such having been the intention of the grantor, although reducing the amount of power granted in the premises. The court said that while it was undoubtedly the rule that where an estate is expressly granted a condition which destroys the grant is void as repugnant to the thing first granted and that an habendum is void if repugnant to the estate granted, yet "where the grant is uncertain or indefinite concerning the estate intended to be vested in the grantee the habendum performs the office of defining, qualifying or controlling."

This case seems to overrule *Bassett* v. *Budlong.* 77 Mich: 338, a case much relied upon by the defendant, in which a conveyance to the grantor's wife "her heirs and assigns forever" was held to be controlled by an habendum providing that upon her dying before her husband the premises should revert to him.

In *Prior* v. *Quackenbush,* 29 Ind. 475, there was a conveyance which would have passed a fee simple to the grantee but for a clause at the end that it was upon the express condition that at the grantee's death the land should forever be in B and C as the only heirs contemplated or included in the deed. It

was held that these words were explanatory of the term "heirs" and created a life estate in the grantee with remainder in fee to B and C. The court regarded the clause as if it were in the premises rather than the habendum although it was in neither. *Clapp* v. *Byrnes,* 3 App. Div. (38 N. Y. Suppl. 1063), a conveyance to the grantee, "his heirs and assigns," habendum "to his and their own proper use, benefit and behoof forever," the deed reciting that there was litigation between the grantors concerning the property which they wished to end and for that purpose and for a nominal consideration that they conveyed the estate to a third person. They also covenanted to ratify the grantee's acts performed by him by virtue of the instrument, the grantee covenanting to accept the transfer for the "purposes herein expressed." It was held that the grantee did not receive the beneficial interest and that the deed at the most created a power in trust. "The instrument indicated with reasonable certainty the true character of the transaction and that there was evidently no intention to give the grantee the beneficial interest in the estate" or any interest other than "required to carry out the purposes mentioned in the deed." The statute requiring courts "to carry into effect the intent of the parties so far as such intent can be ascertained from the whole instrument and is consistent with the rules of law," the court said, "The intent, when apparent and not repugnant to any rule of law, will control the technical words for the intent and not the words is the essence of every agreement."

In *Barnett* v. *Barnett,* 104 Cal. 298, a conveyance to the grantee's "heirs and assigns forever" habendum for his natural life and to the issue and heirs of his body was held to give a life estate only, the court saying that at common law this would be an estate in fee tail and if the deed had been executed prior to the adoption of the civil code would have been so construed. *Flagg* v. *Eames,* 40 Vt. 13, was a conveyance to the grantee "and her heirs and assigns forever" habendum to the grantee and

her heirs and assigns forever with covenants of warranty and a clause thereto annexed, "always reserving the reversion to myself and heirs as stipulated in the deed," referring to an antenuptial deed of the same date. The court said: "It is clear that in the premises or granting part of this deed the terms and description both in respect to the subject of the grant and to the estate conveyed are repugnant and contradictory," and that it was impossible not to say that the grantor's intention was to convey to the grantee an estate for her life and not an estate in fee and that this intention was plainly expressed on the face of the deed, while an antenuptial settlement contained a distinct recognition of the fact that the estate conveyed to her was only a life estate and that the terms in the deed which showed the purpose to convey a life estate were a part of the grant. "The words which are repugnant to each other are not contained in different clauses in the deed but form a part of its granting clause." *Rines* v. *Mansfield,* 96 Mo. 394, was a conveyance by way of indenture from the grantor and his wife conveying to the grantee "his children and assigns forever all that tract," etc., "to hold the above described premises unto the said grantee and his heirs forever." Then follows a warranty to the grantee, her children and assigns. The court held that in view of the evidence that the grantee had eight children whose names could have been inserted in the deed if they were meant to take as tenants in common with the grantee and that the habendum was to the grantee and to her heirs, the word "children" in the granting clause was used in the sense of "heirs," saying: "While the habendum clause in the deed cannot be used to defeat a grant it may be used to explain or qualify it and to define the interest granted if it has not already been granted. These cases do not conflict with the general rule.

It is evident that the common law rule is generally recognized that "In the case of a clear repugnancy between the premises and the habendum, the premises will prevail to the extent that

an estate created in the granting clause cannot be cut down or invalidated by limitations in the habendum" (2 Tiffany Law of Real Property, 870), and that "A legal estate in fee simple cannot, by the terms of its creation, be made subject to a provision that it shall not be transferred by its owner; and this is the case, whether such a provision takes the form of a condition, special limitation, or executory limitation, terminating the estate upon an attempted transfer, or the form merely of a prohibition·of such a transfer." Ib. 1135.

The Hawaiian deed, of which a copy has been filed.by request of court, shows that the English version appears to have been adapted to forms in English deeds. For instance, it has no formal habendum, but in place of it, immediately after the clauses marked 1 and 2 requiring that the grantee shall not sell or·mortgage the land and shall pay the mortgage on it, appear the words which literally may be translated, "The land is gone (lilo), all the rights and the benefits upon it to said Mary Nanea Simerson immediately after our dying," and next following, "and upon her dying the land will (or shall) descend (ili, usually meaning go ·as an inheritance and translated by the parties as "descend") upon her child which she now has, W. K. S., and other children which she may have hereafter and to their heirs and assigns forever." This is not a remainder but an expression of the grantor's wish or intention that the inheritance which he had given to his daughter should descend from her to his grandchildren. There is no Hawaiian word which is the exact equivalent of "condition," the word "kumu," translated "conditions," used in the version, meaning "grounds" or "considerations." Moreover, the Hawaiian language does not distinguish between the imperative mood and the future tense. The deed then would readily mean to the Hawaiian mind that the grantor gives the land to his daughter absolutely and to her heirs and assigns forever, considering that.she will (or shall) not sell or mortgage it and will pay off its mortgage and that at

her death it will (or shall) descend to her children. These expressions are equally futile in their effect upon the fee granted to the plaintiff.

*C. F. Peterson* for plaintiff.

*A. D. Larnach* for defendant.

### DISSENTING OPINION OF PERRY, J.

It is clear to my mind that the actual intent of the grantors, inartificially expressed, was in effect (1) to retain a life tenancy for the term of the life of the survivor of them, (2) to give Mary a life tenancy for the term of her life and (3) to give the remainder to Mary's son William and to such other children, if any, as might be born to her after the date of the deed. The general rule seems to be undoubted that in deeds as well as in other instruments the intent of the parties, when ascertained, is to be given effect unless it is in conflict with some rule of law. It is true, as stated in *Maker* v. *Lazell,* 83 Me. 562, that muniments of title especially are guarded by positive rules of law to secure their certainty, precision and permanency. Is there any such rule which stands in the way of giving effect to the intent of these grantors above outlined?

The rule invoked is that when in a deed the habendum is as to the quantity of the estate conveyed repugnant to the premises the former yields, this upon the theory, apparently, that what the grantor has given away in the premises he cannot in the habendum recall, and also to secure certainty in the construction of deeds. The rule is equally clear, however, that the habendum may be given effect if the premises are (a) silent as to the quantum of the estate granted, or (b) ambiguous, contradictory or uncertain in that respect. The habendum may be used in such cases to explain or qualify the premises and to define or render certain the interest granted. See, for example, *Flagg* v. *Eames,* 40 Vt. 13, and *Rines* v. *Mansfield,* 96 Mo. 394. In the discussions in the books on this subject the term

"premises" is used as including all that precedes the habendum. While the grant in this instance, as expressed in the earlier part of the premises, is to Mary and her heirs forever, the grantors in the same breath, after reserving a life estate to themselves, say that the grant is subject to the limitation that Mary may not sell or convey, both of which are essential incidents to a fee simple. It is immaterial, of course, that these provisions are in separate sentences or even in separate paragraphs. They are to be read as though they were all in the same paragraph and sentence. The case is very much as though the grant had been of a fee simple to Mary, "provided, however, that Mary shall have only a life estate." Reading the deed to this point only, the question may well be asked, what did the grantors mean to give to Mary, the fee, as stated in the first clause or something less than the fee—perhaps a life estate—as indicated in the later clause of the premises? Under these circumstances the habendum may, I think, be permitted to explain the language used in the premises and to remove its ambiguity. It answers clearly the question which occurs upon reading the premises. Reading it in its ordinary acceptation it shows, consistently with the preceding restrictions against sale and mortgage, that the intent was to give Mary a life estate only, with remainder to her son William subject to open and let in afterborn children. The words "e ili aku" may, under some circumstances, mean to "descend," but in this instance they were used, I think, as meaning to "go." As to the word "descend," see for example, *Honolulu Investment Co.* v. *Rowland,* 14 Haw. 271, 272. The grantors intended a present conveyance of the remainder to William subject to open in favor of other children, and not to merely restrict the course of descent as such from Mary, the holder of the fee.

The ordinary rule that a conveyance is not good as to a person named in the habendum who is not named in the premises

does not apply to a grant of a remainder. So also a grant is good of a remainder to one (in esse) of a class subject to open and let in others (not then in esse) of that class.

The first question should be answered in the negative and the second in the affirmative.