IN THE MATTER OF THE PETITION OF MORRIS ROSENBLEDT, TRUSTEE FOR EVA McCLELLAN, LILY NAUELE BRANDT AND OTILLA ROBINSON TO REGISTER TITLE TO CERTAIN LANDS SITUATE IN HONOLULU, CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

No. 1063.

RESERVED QUESTIONS FROM LAND COURT.

HON. S. B. KEMP, JUDGE.

ARGUED APRIL 29, 1918.                    DECIDED MAY 6, 1918.

COKE, C. J., QUARLES AND KEMP, JJ.

DEEDS—*inoperative clauses.*

> Where the granting clause conveys to grantee a title in fee simple phrases therein expressing the motive of the grantor for making the deed are inoperative and do not limit the grant.

SAME—*words and phrases—"forever."*

> The absence of the word "forever" from the granting clause of a deed does not limit the grant to a life estate; the word was of

Syllabus.

no particular signification at common law and we have no statute requiring its use.

SAME—*same—heirs.*

The word "heirs" is not necessary in a deed in order to convey the fee to the grantee.

SAME—*repugnancy between premises and habendum.*

Where the granting clause of a deed conveys the title in fee to the grantee and the habendum in terms limits it to an estate for life with remainder to the lawfully begotten children of the grantee there is a repugnancy between the granting clause and the habendum, the former controlling to the exclusion of the latter, the grantee taking the fee simple title under the deed.

COURTS—*land court—jurisdiction.*

The land court is a court of limited jurisdiction created for the special purpose of carrying into effect the Torrens title scheme, derives all its powers from the statute relating to it and can exercise no power not found within those statutes.

SAME—*same—registering title between answering contestants.*

The land court is given power to register the title of the applicant only and has no power to register the title of answering contestants between whom exist a diversity of interests.

OPINION OF THE COURT BY QUARLES, J.

July 23, 1863, William Wond made a deed of gift to his daughter Elizabeth Wond, then about to be married, conveying to her certain described premises in Honolulu, which deed, omitting the description, is as follows:

"Know all men by these presents that I William Wond of Honolulu Hawaiian Islands, in consideration of the natural love and affection which I have and bear for my beloved daughter Elizabeth Wond, also of Honolulu H. I. and also for other good causes and considerations, I have given, granted and confirmed and by these presents do give grant and confirm unto the said Elizabeth Wond, as a wedding gift, and also for the better support, maintenance and livelihood of the said Elizabeth Wond her lawfully begotten children their heirs and assigns that certain tract or parcel of land situated in the City of

Honolulu aforesaid and described as follows, viz.: * * *

"And the reversion and reversions, remainder and remainders, rents issues and profits thereof and all the estate right title interest, property, claim and demand whatsoever held by me the said William Wond, of, in and to the said premises and of, in and to every part and parcel thereof with the appurtenances.

"To have and to hold all and singular the premises hereby granted and confirmed or mentioned with all the appurtenances unto the said Elizabeth Wond her lawfully begotten children their heirs and assigns to their only proper use and behoof forever.

"This deed of gift, nevertheless, the said Elizabeth Wond shall not mortgage, sell, give, grant or otherwise alienate or dispose of any portion parcel or part of said land nor of any portion parcel or part of the premises, hereditaments and appurtenances thereto belonging to any person or persons or in any way or manner whatsoever. That in the event of the death of the said Elizabeth Wond without leaving lawfully begotten children then the said land premises hereditaments and appurtenances thereunto belonging shall revert to me the said William Wond for my whole and sole use disposal and benefit. And in the event of my death then the said land with the premises hereditaments and appurtenances thereunto belonging shall revert to my beloved daughter Mary Ann Wond, her children their heirs and assigns forever.—In the event of Mary Ann Wond's death without leaving lawfully begotten issue then the said land premises hereditaments and appurtenances shall revert to my next living child and so down in succession according to age, the oldest taking the priority.

"And I the said William Wond for myself my heirs and assigns do covenant promise and agree to and with my said beloved daughter Elizabeth Wond her lawfully begotten children their heirs and assigns shall and may lawfully from time to time and at all times hereafter peacefully and quietly have, hold, occupy, possess and enjoy the said land and premises hereby granted without the lawful hindrance or molestation of the said William Wond his heirs and assigns or of any other person or persons

whatsoever by or with his or their act, consent, privity or procurement.

"In witness whereof I have hereunto set my hand and seal this 23rd day of July One Thousand Eight Hundred and Sixty-three."

Elizabeth married Isaac Hart soon after the execution of the deed and by him had nine lawfully begotten children, one of whom died in infancy while both parents were living, and another, Edith Kamaka Aholo, died intestate, unmarried and without issue, after the death of her father. Isaac Hart died in April, 1881, and while a widow Elizabeth had three children, one born in 1884, one in 1886 and the other in 1889, of whom Philip Meeawa was the father. Later Elizabeth and Philip Meeawa were married. Elizabeth died intestate April 13, 1912, leaving surviving her seven lawfully begotten children and two of the three born out of wedlock, one of them having died in 1909, intestate, married, and leaving an infant son, Joseph Ohia, who died March 28, 1910.

The petitioner, Rosenbledt, as trustee for three of the lawfully begotten children, filed his petition in the land court in which he claims title to an undivided three-sevenths of the lands conveyed by the deed and seeks to have the title to such undivided interests registered. The respondents Muhlendorf, Jaeger and Wodehouse, as trustees under the Will of Bathsheba M. Allen, deceased, have appeared and answered and claim to have acquired title to an undivided 5110/9072 interest in said land. The respondent, T. Brandt, appeared, answered the said petition, and claims title to an undivided 476/9072 interest in and to the said land, a part of which, a 119/9072 interest, he claims to have acquired by deed from Lena K. Dykes, but which she in her answer denies and claims to own the same; a further part of said 476/9072 interest in said land, to wit, a 119/9072 interest, Brandt claims

to have acquired by deed from Minnie Makinney, which claim the said trustees in their answer deny and in their said answer allege that the title to said fractional interest is now vested in them. All of the parties claim from a common source, namely, the said deed from William Wond to Elizabeth Wond. The petitioner and some of the respondents claim through lawfully begotten children of Elizabeth, while other interests are claimed by some of the parties respondent through children not lawfully begotten. It does not appear that the interests which might be claimed through the latter class of children are represented in the proceedings in the land court.

The judge of the land court being in doubt as to the rules of law applicable to points which have arisen reserved to this court the following questions:

"1.  Did the said deed give to the said Elizabeth Wond a life estate, with a vested remainder to her lawfully begotten children?

"2.  Did the said deed give to the said Elizabeth Wond a life estate, with a contingent remainder to such of her lawfully begotten children as should survive her?

"3.  Did the said deed give to the said Elizabeth Wond an estate in fee simple in said land?

"4.  Has the land court the power to register in this proceeding the titles of respondents to such undivided interests as may be shown therein to be owned by the said respondents or any of them?

"5.  If the fourth question is answered in the negative, has this court the power in this proceeding to find and decree, as between the several respondents herein, what title or interest in the land is vested in them or either of them?"

The solution of these questions calls for a construction of the deed and a determination of its legal effect. It is claimed on behalf of the petitioner and also on behalf of the respondents who have appeared in this court, among whom exist a diversity of interests, that the deed conveyed

to Elizabeth a life estate only with remainder in fee to
her after-born lawfully begotten children, the first of whom
took a vested remainder in fee after which it was a case
of open and let in upon the birth of each succeeding law-
fully begotten child.   After much consideration we are
unable to accept this contention as correct.   The later ex-
pressions in the deed evince the intention of the grantor
to create an estate tail but this intent is rebutted by the
absence of the technical words limiting the fee to the
"heirs of the body" of the grantee or to any particular
heirs of her body, such words being necessary to create
an estate tail at common law which required both words
of inheritance and words of procreation in order to create
an estate tail.   "If, therefore, either the words of inherit-
ance, or words of procreation be omitted, albeit the others
are inserted in the grant, this will not make an estate tail.
As, if the grant be to a man and *his heirs of his body,* to
a man and his seed, to a man and his children, or off-
spring:  All these are only estates for life, there wanting
the words of inheritance, his heirs" (2 Blackstone Com.
114, 115; 1 Washburn Real Prop. Sec. 147), as well as to
create a fee simple conditional.   But an estate in fee
simple conditional cannot exist in this jurisdiction, the
common law rule recognizing it being rejected (*Rooke* v.
*Queen's Hospital,* 12 Haw. 375), and estates tail have
also been rejected (*Rooke* v. *Queen's Hospital, supra;
Nahaolelua* v. *Hcen,* 20 Haw. 372; *Boeynaems* v. *Ah Leong,*
21 Haw. 699; *Kinney* v. *Oahu Sugar Co.,* 23 Haw. 747).

If we eliminate from the premises or granting clause
the words "as a wedding gift, and also for the better sup-
port, maintenance and livelihood of the said Elizabeth
Wond her lawfully begotten children their heirs and
assigns" we find in the premises an absolute grant in fee
to Elizabeth with the usual words of inheritance and the

word, forever, omitted. The words just quoted are no part
of the grant but are descriptive of the motive or purpose
of the grantor and neither add to nor limit the grant
(*Magoon* v. *Lord-Young Engineering Co.*, 22 Haw. 327,
336; *Mauzy* v. *Mauzy*, 79 Va. 537). The absence of the
word "forever" from the granting clause of a deed does
not limit the grant to a life estate as the word was of no
particular significance at common law (2 Blackstone Com.
107; 1 Washburn Real Prop.—6 ed.—Sec. 147), and we have
no statute requiring its use. Eliminating the words
expressive of the motive or purpose of the grantor in
making the deed from the premises or granting clause,
the words following the description of the property con-
veyed, to wit: "And the reversion and reversions, remain-
der and remainders, rents issues and profits thereof and
all the estate right title interest, property, claim and de-
mand whatsoever held by me the said William Wond, of,
in and to the said premises, and of, in and to every part
and parcel thereof with the appurtenances" evince the in-
tent of the grantor to convey all of the estate which he
owned in the property, the title in fee, to the grantee. He
retained nothing (*Vaughn* v. *Stuzaker*, 16 Ind. 338). The
word "heirs," while necessary at common law in order to
vest by deed the title in fee, is not necessary, and never
has been, in Hawaii (*Thurston* v. *Allen*, 8 Haw. 392;
*Hemen* v. *Kamakaia*, 10 Haw. 547; *Branca* v. *Makuakane*,
13 Haw. 499; *Kaleialii* v. *Sullivan*, 23 Haw. 38, affirmed
on appeal, 242 Fed. 466; *Keanu* v. *Kaohi*, 14 Haw. 142).

The death of both the grantor and the grantee, the latter
leaving surviving her lawfully begotten children, nar-
rows the determination to an elucidation of what estate
the children of the grantee, whether lawfully begotten or
otherwise, took in the property conveyed by the deed. The
inhibition against alienation found in the clause following

the habendum is illegal and void (*Simerson* v. *Simerson,* 20 Haw. 57) and may be regarded as out of the deed. Eliminating from the deed all of the inoperative parts we find the premises granting the fee simple title to the grantee and the habendum attempting to limit the grant to a life estate in the grantee with remainder in fee to her lawfully begotten children, their heirs and assigns. There is an absolute conflict and utter repugnancy between the granting clause and the habendum. We need not go further than our own decisions to determine the effect of the deed under such conditions. Owing to repugnancy between them the premises or granting clause controls (*Simerson* v. *Simerson, supra*), and all later provisions that are repugnant to the granting clause are inoperative (*Simerson* v. *Simerson, supra; Kaleialii* v. *Sullivan, supra; Kahaulelio* v. *Ihihi, ante,* p. 292.)

The petitioner insists that under the ruling in *Booth* v. *Baker,* 10 Haw. 543, and in *Nahaolelua* v. *Heen, supra,* that the grantee, Elizabeth Wond, took only a life estate with remainder in fee in her after-born lawfully begotten children. Those decisions we do not regard as in point but as distinguishable from the case at bar. In *Booth* v. *Baker* the provision in a will that Elizabeth "on attaining her majority to have all the benefits of the land during her lifetime, but she is not to dispose of any of the real or personal property to any one, and if she should have a child during her lifetime then all my property, real and personal, shall go to such child" was construed as vesting in Elizabeth a life estate and in her unborn child or children a contingent remainder which upon the birth of the first child ceased to be a contingent remainder in the first born child subject to open and let in after-born children. In that case a will was being construed where, by established rules of construction, in case of conflicting provisions the later control, whereas in the case at bar we

are construing a deed where the rule is reversed and in case of conflicting provisions the first controls. We must also bear in mind that in order to create an estate or to limit an estate devised technical words required in a deed are not always necessary in a will, greater latitude being allowed in case of the latter (2 Blackstone Com. 115). In *Nahaolelua* v. *Heen, supra,* the premises or granting clause of a deed conveyed to the grantee and "to the heirs of her body" and the habendum read "To have and to hold * * * to the party of the second part, and the heirs of her body forever." Both the granting clause and the habendum were consistent, while a subsequent clause read: "In special trust for the use and benefit of her said son* * * and such other child or children as may hereafter be born to her, and his or their heirs and assigns forever as he or they shall arrive at the age of legal majority." The later clause was held to be repugnant to the granting clause and to the habendum and inoperative and that the grantee took a life estate with vested remainder in fee simple in her children. That case is unlike the case at bar in that the granting clause and habendum were not repugnant to each other but were in agreement, while here there is conflict and repugnancy between the granting clause and the habendum, and in this event the former controls and the latter must give way. The clause against alienation with the subsequent language evinces the intent of the grantor to create an estate tail carrying a life estate in the first taker. Under these circumstances we must hold that the deed vested the fee simple title in the grantee and that her children take under her by our statutes of descent. We follow the decision in *Kinney* v. *Oahu Sugar Co., supra,* wherein it is said: "In short, in such a case as this, a holding that the first taker shall have an estate in fee simple will go as near as may be under the law toward effectuating the futile intent to create an estate tail."

We now consider the fourth and fifth reserved questions. Section 3133 R. L. as amended establishes a land court with exclusive jurisdiction of all applications to register title to land, makes the court a court of record with a seal and authorizes it to make and prescribe rules of practice and forms to be used in proceedings before it. Later sections authorize appeals to this court upon points of law and to the circuit courts sitting with a jury upon questions of fact. In case of appeal to the circuit court sitting with a jury the issues are to be framed in the land court within thirty days after the date of the judgment from which the appeal is taken. The owner of any estate or interest in land may apply to have his title registered. The matters which the petition shall contain, the contents of notices and the manner of giving them, as well as other matters of practice, are prescribed and the court given power to make other regulations. It is provided that any person claiming an interest, whether named in the notice or not, may appear, answer and state all objections to the application and set forth the interest of the answering party. The court is given power to make all orders and judgments, to issue writs of possession and other process and to take all other steps necessary for the promotion of justice in matters pending before it and to carry into full effect all powers which are given to it by the laws of the Territory. The court is authorized to dismiss the application of an applicant for registration of absolute title when the court finds that he has not a proper title for registration without prejudice and may permit the applicant to amend his application before final decree. The court is, by the terms of the statute, to decree and register absolute titles which bind all of the world, including the Territory, with certain exceptions, which are subject to be reopened only on petition for review upon the ground of fraud within one year. The court is

also by the terms of the statute authorized to register possessory titles binding all claims except those subsisting or capable or arising at the time of registration. Qualified titles, those subject to certain reservations, may be registered. The court may remove clouds on titles and may find and decree in whom the title to any interest, legal or equitable, in land is vested, whether in the applicant or in any other person. We have been unable to find any provision in the land court act which gives the court power to register title in any one other than the applicant, or to register title to a moiety in favor of one or the other of conflicting claimants thereto who answer the petition of the applicant and claim adversely one to the other, and we have been pointed to none and counsel say that they can point to none. The power given is to determine between the applicant and parties who answer and contest the applicant's claim to title, but not to determine between conflicting answering defendants as to their respective rights. The land court is a court of limited jurisdiction, created for a special purpose, that of carrying into effect what is known as the Torrens title scheme, derives all of its power from the statutes relating to it, and can exercise no power not found within those statutes.

It is urged upon us that expediency, convenience and the avoidance of cost of other applications on the part of the respective respondents in this case should be considered in answering the last two questions reserved. We are of opinion that we are not at liberty to consider such matters and the questions must be answered alone from the terms of the statutes relating to the land court. Many illustrations by way of hypothecated cases might be given to show the danger of holding that the land court has power to register title to any part of the land involved or interest therein in any party who may appear and answer

the applicant's petition and claim title to any particular interest in such property. For instance, A files an application to register an undivided one-half interest in certain land. The only notice that is published to the world is that of the filing of applicant's petition. B, who owns an undivided one-half interest in this same land, sees the notice but is satisfied that A owns the undivided one-half interest which he claims so he does not appear and answer or contest the claim of A. C appears, answers and claims to own an undivided one-half interest in the same land and asks the court to decree that he owns an undivided one-half interest in said land. Upon hearing the showing made is sufficient to justify the land court in holding that A owns an undivided one-half interest in the land and to register his title thereto and to determine and decree that C owns the other undivided one-half interest in said land, whereas, if B had appeared and answered and brought evidence within his power to bring the court would have been justified only in holding that A owned an undivided one-half interest and B the other undivided one-half interest in the land involved.

We answer the first, second, fourth and fifth reserved questions in the negative, and the third question reserved in the affirmative.

*E. C. Peters* for petitioner.

*M. B. Henshaw* (with whom *Henry Holmes* and *C. H. Olson* appear on the brief) and *B. L. Marx* for respondents.