## RUTH KEELIKOLANI *vs.* COMMISSIONERS OF CROWN LANDS.

### EJECTMENT. BEFORE AUSTIN, J.

### DECEMBER, 1883.

Plaintiff, as heir of Kamehameha IV., held entitled to certain lands described in Land Commission Award 10,806, said lands being the private property of said King, and not Crown Lands, although in possession of the Commissioners of Crown Lands, under claim of title.

The conveyance by plaintiff of all her interest in Crown Lands, "and of all lands commonly known, called or reputed to be Crown Lands," held not to include the land in question.

### DECISION OF AUSTIN, J.

An important question arises at the outset of this case as to whether the plaintiff has not conveyed away to Claus Spreckels all right and title which she had to the lands which she now seeks to recover in ejectment.

On the 13th day of September, 1880, the plaintiff for the consideration of $10,000, executed, acknowledged and delivered to Claus Speckels an instrument in writing under seal, whereby she conveyed to him, his heirs and assigns, "all and singular the several lands reserved by His late Majesty Kamehameha III., to himself as his own private property, and mentioned and

specified and declared in and by a certain act, ordinance or law passed on the 7th day of June, in the year of our Lord one thousand eight hundred and forty-eight, entitled, 'An Act relating to the lands of His Majesty the King and of the Government,' to be the private lands of His Majesty Kamehameha III., and commonly called and known as the 'Crown Lands,' together with all rights, easements and appurtenances to the said lands or either of them belonging or in anywise appertaining. And all my estate, right, title and interest both at law and in equity, of, in and to the said lands."

On examining the statute referred to, there is found a long list of lands by name which are reserved by His Majesty Kamehameha III., as his own private property, and are declared by the Legislature to be his private lands; no other lands are so reserved by that act. The lands sought to be recovered in this action are not named in the act, and if what we have quoted were substantially all that the instrument contained, then the title to the land in suit was not thereby conveyed away. But the words quoted are followed by the following general words: "And of all other lands commonly called, known or reputed to be Crown Lands, or to be part, parcel or member thereof and belonging to me or to which I may be now entitled either as heir to His said Majesty Kamehameha III., or to their late Majesties Kamehameha IV., Kamehameha V., my father His Highness the late M. Kekuanaoa, or in any other manner or right whatsoever."

It must be admitted that these latter words quoted would in terms include the lands in suit if they were "called, known or reputed" to be "Crown Lands." And the proofs show that the lands in suit were treated as Crown Lands by the Crown Land Commissioners.

To determine how this instrument shall be construed, it is necessary to refer to certain familiar and well settled principles of law.

In construing a contract, "the first point is to ascertain what the parties themselves meant and understood." Parsons on Contracts, Vol. 2, p. 7.

The intention when found is not absolutely controlling in every instance, but it is always of the utmost importance. *Id.*, page 13, 14.

"Where there are recitals of particular claims or considerations, followed by general words of release, the general words shall be restrained by the particular recital." *Id.*, note R. and many cases cited.

A leading case is *Moore vs. McGrath*, Cowper, 9, decided by Lord Mansfield in the Court of King's Bench in 1774. The principles of that case have never been questioned.

In that case Michael Moore, being seized of a moiety of certain lands in County Mayo and King's County, Ireland, in right of his wife, and being likewise seized of certain other lands in the counties of Roscommon, Clare and Galway, in Ireland, as a paternal estate, executed a deed whereby he conveyed by specific descriptions all the lands held by him in right of his wife. And then the deed added, "together with all other the said Michael Moore's lands, tenements and hereditaments in the Kingdom of Ireland."

The lands held in right of his wife were also by the deed devoted to special uses.

Lord Mansfield considered the whole deed, and decided that the intent of the grantor was plain that he only intended to convey the lands held in right of his wife; that the general words used were of no effect; that had they been intended to convey his paternal estate, those lands, as were the others, would have been described and have been devoted to special uses.

See also *Moore vs. Jackson*, 4 Wend., 58; *McIntyre vs. Williamson*, 1 Ed. Ch., 34; *Rich vs. Lord*, 18 Pick., 322; *Whallon vs. Kauffman*, 19 Johns., 97; *Jackson vs. Stackhouse*, 1 Cow., 122; *Lyman vs. Clark*, 9 Mass., 234; *Coles vs. Hawes*, 2 Johns. Cases, 203, and note; 2 Black. Com., 379.

These cases and citations, and the decisions to which they refer, show the rules of interpretation stated to be well settled and undisputed. We have found no authority against them.

They must control us in the construction of the paper in question. Let us then inquire from that paper what was the intention of the grantor as to what lands were to be conveyed by it. She first speaks of those lands as those "reserved by His late Majesty Kamehameha III. to himself as his own private lands." She at once qualifies this by saying that "they are mentioned and specified, in and by a certain act passed June 7, 1848, to be the private lands" of His Majesty Kamehameha III. She then designates the whole lands referred to as "commonly called and known as the 'Crown Lands.'" Then follows what usually follows the description of the lands conveyed, in all deeds—the general clause granting all rights, easements and appurtenances to said lands and all estate therein.

Then follows the clause which the defendant claims conveys the land in suit, by the words "and of all lands commonly called, known or reputed to be Crown Lands, or to be part, parcel, or member thereof," belonging to the grantor from any source whatever.

I do not think the grantor by this latter clause intended to add anything to the lands theretofore specified and particularly described. I do not believe she could have intended, by a general sweeping statement, without any description, to sell the lands in suit. Had she so intended, I think those lands would have been described as definitely as the other lands were, and their description would have immediately followed the other description, and would have preceded the general clause granting the appurtenances.

I think these words, out of excess of caution, were added by the conveyancer, to be sure that there should be no doubt about the grant of all the lands specified in the act.

I think the latter clause should be construed as though it read—and of all other lands commonly called, known or reputed to be Crown Lands, or to be part, parcel or member thereof, "which I inherit in any way, and which are reserved by His late Majesty Kamehameha III. to himself as his own private

29

property, and are mentioned, specified and declared by the Act of June 7, 1848, to be his private lands."

Manifestly, I think, the only lands the sale of which was considered and passed upon by the grantor when she signed this instrument, were the lands specified in the act. That she then contemplated the sale of the lands in suit, no description of which was before her, and no definite idea of which could have been in her mind—incautiously, recklessly, and without thought—seems to me impossible. To hold that, by the general words "all other lands called, known, or reputed to be Crown Lands," she intended to put at risk the title to her entire property, upon possible parol proof that at some time it was called, known or reputed to be Crown Lands, would be unreasonable. I do not believe that the grantee conceived or imagined that he was obtaining right to any lands other than those specified in the Act.

I think the grantor's intent in this case must govern the construction of her grant. I think it would be dangerous to hold otherwise.

And this brings me to consider the last question in the case: whether the lands in suit are Crown Lands or belong to the plaintiff, as heir of Kekuanaoa, her father, and Kamehameha V., her brother. It is admitted that the plaintiff is heir as alleged.

But the Attorney-General claims that Kekuanaoa was estopped because he did not assert his title to this land as heir of Kamehameha IV., at the final accounting in the matter of Kamehameha IV.'s estate on January 19, 1869. I can find no principle of law which allows such an estoppel. That proceeding was not for the purpose of settling the title to real estate. It is not pretended that the defendants, or those under or in whose behalf they claim, have been in possession of the lands adversely long enough to countervail the title of the true heirs. That title cannot be divested by less than twenty years adverse possession.

His present Majesty, for whose benefit the defendants hold

the land in suit, does not claim to hold the lands as heir of Kamehameha IV., and he therefore cannot as against the true heirs derive a benefit from the administration of his estate.

If this objection be properly disposed of, there is nothing left upon which the defendants can defend this suit.

It is conceded that Kamehameha IV. was the owner of the lands in suit, when he died, under award 10,806, made to Kamehameha III. That they were never mortgaged and never sold, and that the title to them remains as it did at the death of Kamehameha IV., on November 30, 1863.

On the 8th day of March, 1848, His Majesty Kamehameha III. signed and sealed two instruments, by one of which he conveyed to the Government, for Government purposes, the larger part of his Royal lands, and by the other, which refers to the first, he retained or reserved for himself, his heirs and successors forever, certain lands described. By the Act of June 7, 1848, above mentioned, these instruments are confirmed, and the said lands reserved are described. By this instrument of reservation it has been held, and I shall not now question it, that the title to the lands therein referred to was deflected from its natural course by descent, and became an appanage of the Hawaiian Crown. By that instrument of reservation, His present Majesty holds the beneficial interest in the lands therein referred to while he remains the reigning Sovereign. By that same instrument, and by no other means, and from no other source, the defendants seek to hold, in His Majesty's behalf, the lands in suit. At the time of the death of Kamehameha IV., he owned many other lands besides the lands reserved as Crown Lands. This appears by the proceedings in administration of his estate, which are in evidence. It is also mentioned in the Act of January 3d, 1865, whereby the Crown Lands are declared to be inalienable, and to descend to the heirs and successors of the Hawaiian Crown forever. The lands in suit are a part of such other lands of Kamehameha IV. They are not described or referred to in the instrument reserving the Crown Lands, and were never changed or swerved from their natural

course by descent, which makes the plaintiff the unquestionable owner thereof.

After the submission and before the decision of this case the plaintiff died, and by suggestion on the record pursuant to statute, Charles R. Bishop and R. W. Meyer, the plaintiff's executors and personal representatives, are substituted as plaintiffs in her place.

Let judgment be entered in their favor for the relief demanded in the complaint, with costs.

*A. S. Hartwell,* for plaintiff.

*E. Preston,* for defendants.

Honolulu, December 18th, 1883.