JACOB WEART AND JOHN T. CRUSER, PLAINTIFFS IN
ERROR, v. MATTHIAS V. D. CRUSER, DEFENDANT IN
ERROR.

The will of a testator contained the following clause: " I give and devise
to my son, M. V. D. C., his heirs and assigns, by his present wife, Sally
Ann, forever, the farm," &c. *Held,* that the intent of the testator was
to create an estate which, under the statute of 13 *Edw. I.,* would have
been an estate in special tail, and under the provisions of section 11 of
the act concerning descents, that estate became an estate for life in M.
V. D. C., the devisee, with remainder to his children in fee simple.

On error to the Supreme Court.

The action was in ejectment, and brought to recover an
equal one-eighth part of a farm in the county of Somerset.
The cause was tried in the Somerset Circuit, without a jury.
Judgment was rendered in favor of the plaintiff, and the fol-
lowing reasons were assigned for the judgment by

MAGIE, J. The cause is of such importance as to justify
and demand a statement of the views of the court on the legal
question presented. That question respects the title which
Matthias Van Dike Cruser, the father of the plaintiff, took
under the will of Frederick Cruser, deceased. If the title
was or became a fee simple then the defendants must succeed.
If the title, under the statute of 13 *Edw. I.* (called the statute
of entails), was a fee tail, then the plaintiff has a right to re-
cover.

The solution of the question depends on the construction
of the following clause of the will of Frederick Cruser, de-
ceased, viz.: " I give and devise unto my son, Matthias Van
Dike Cruser, his heirs and assigns, by his present wife, Sally
Ann, forever, the farm," &c.

The argument of defendant's counsel was mainly directed
in the line of two opinions given by eminent counsel re-
specting the true construction of this clause. Both these
opinions have been before me and have received, as they de-

serve, most careful consideration.    The opinion of Mr. Brad-
ley, now associate justice of the Supreme Court of the United
States, was given in 1866.    He first takes the position that the
clause in question contains no words of procreation nor any
equivalent words, and that its words do not necessarily imply
the descendants of the devisee, for (he says) " the heirs of M.
V. D. C. by his present wife, Sally Ann, must be descended
from her, but need not necessarily be descended from him, for
if he should die first and his wife should marry his next cousin
and have issue, this issue might become the collateral heirs of
M." He then likens the estate devised to a qualified fee,
which he describes as being—in the language of Mr. Preston
—an interest given in its first limitation to a man and to cer-
tain of his heirs, and not extended to all of them generally nor
confined to the issue of his body.    He then concludes that the
limitation of this clause, restricting the descent to such of the
heirs of M. V. D. C. as should be descendants of Sally Ann,
his wife, creates a course of descent different from that pre-
scribed by our laws and so is repugnant to the estate granted
to M. V. D. C., and void.    This conclusion seems to indicate
that the estate which M. V. D. C. took was a fee simple.

The foundation of this conclusion is evidently the alleged
lack of words of procreation, or words of equivalent meaning.
His contention is that the words " heirs of M. V. D. C. by
his present wife, Sally Ann," do not necessarily import the
issue of M. V. D. C.    If this premise is incorrect the con-
clusion must be rejected.

I feel constrained to regard the words as entirely equivalent
to " heirs *of the body* of M. V. D. C. by his present wife, Sally
Ann."    This instrument to be construed is a will.    What we
are to ascertain is the intent of the testator.    No one who
reads the clause will doubt that his intent was to limit the
estate to the issue of M. V. D. C. by Sally Ann.

The books are full of illustrations of precisely similar in-
ferences of intent drawn from the use of similar language.
Thus, in *Den* v. *Cox*, 4 *Halst.* 10, the phrase " his lawfully
begotten heir " was held to create an estate tail and to be

equivalent to "lawfully begotten heir of his body." Yet the words did not necessarily import the issue of the devisee and would have been entirely satisfied by a descent to any heir lawfully begotten, though not of his issue. The words "heirs male" in a devise have always been held to import heirs of the body, and yet they would be entirely satisfied by any male heirs, lineal or collateral. *Den* v. *Fogg*, *Pen.* 819. These illustrations might be indefinitely multiplied.

The present case is not without precedent, and the view I have taken is not without the support of authority. In *Vernon* v. *Wright*, 7 *H. of L. Cas.* 49, a devise to "the right heirs of my grandfather by Mary, his second wife, forever," was held to create an estate tail. The words were said to comprehend words of procreation and to be equivalent to heirs of the body of the grandfather begotten on the body of the wife named.

In *Somers* v. *Parsons*, 1 *Harr.* 181, a devise to J. S. and "to his heirs by his present wife, Anne" was held to create an estate tail. The opinion was by Ford, J., and concurred in by Hornblower, C. J. The judgment of the Supreme Court was afterward reversed by the Court of Errors. But no opinion seems to have been delivered, and the reversal was in 1841. It is not necessary to infer that the reversal went on the ground that the construction given to this clause by the Supreme Court was erroneous. There was a subsequent clause in the will then under consideration which provided that the lands devised were—after the death of the widow to whom they were given for life—to "cede to J. S., his heirs and assigns, to all intents and purposes." It was contended in the Supreme Court that this clause controlled and passed a fee simple. We may fairly presume the same contention was made in the Court of Errors and the reversal was probably on that ground. The case, therefore, is not without weight.

Upon these grounds I think the words of this clause are to be taken as including the idea of procreation and as meaning "heirs of the body" of M. V. D. C. by his wife, Sally Ann.

The other opinion was by A. O. Zabriskie, afterward chan-

cellor. His conclusion is that M. V. D. C. took an estate in fee simple. This conclusion is put upon the force of the word "assigns" which, he insists, indicates a clear intention to give to M. V. D. C. a power to sell. The remaining part of the devise, he thinks, would have its due effect if held to mean that if M. V. D. C. should die without having sold the farm, his heirs by his wife, Sally Ann, would take as purchasers. He admits that unless that construction be given, the clause will come literally within the eleventh section of the Descent act, which provides for the disposition of estates which would be estates tail under the statute of entails. But he suggests that an estate tail special is not within that section because, as he well observes, a literal application of the sections to such estates will invariably thwart the will of the testator.

This suggestion need not be considered, because, in *Zabriskie* v. *Wood*, 8 *C. E. Gr.* 541, the Court of Errors expressly decided that the eleventh section did apply to all estates tail, whether general or special.

The force attributed by Mr. Zabriskie to the word "assigns" in this clause is, in my judgment, excessive and inappropriate. In *Den* v. *Wortendyk*, 2 *Halst.* 363, the question was whether an estate in fee or in tail passed under a clause of a will and the same contention was made. C. J. Kinsey uses the following language: "In the outset I will remark that little or no importance is to be attached to the use of the word '*assigns*' in this case, a circumstance upon which a considerable part of the argument was founded. I am not aware of a single case wherein a certain interest having been given in a will, this word has been held to enlarge or in any manner to affect this interest. Every interest recognized by the law, unless under particular circumstances, is the object of an assignment. It belongs essentially to every species of interest or property and the introduction of the term is, therefore, in every case, superfluous and inoperative in a conveyance of property. The first section of Littleton shows that the word has no enlarging power in a conveyance, and Coke * * * shows that it is

the same in a case of a will. The argument, therefore, rest-ing on the basis is entitled to no consideration."

In the section referred to by the learned Chief Justice, Little-ton declares that a purchase by the words " to have and to hold to him and his assigns forever " would only pass an estate for life. Coke, in his commentary, says that a devise " to him and to his assigns forever " will pass a fee simple by the intent of the devisor. But it is plain that this intent is drawn, not from the use of the word " assigns," but the use of the word " for-ever ; " for he adds that the devise " to one and his assigns " without saying *forever*, the devisee hath but an estate for life. *Co. Litt.* 9, 6.

In *Den, ex dem. Doremus,* v. *Zabriskie,* 3 *Green* 404, on a devise to A and to her heirs lawfully from her body begotten and assigns forever, it was contended that A took a fee simple, and among other reasons, because of an intention to be inferred from the use of the word " assigns." C. J. Hornblower held that the word " assigns " had never been considered sufficient to control previous words of limitation. Upon these cases it seems to me the word relied on has never been applied to en-·large an estate under the circumstances such as appear in this case. The force attributed to the word is inappropriate, be-cause in any event the estate taken by M. V. D. C. was vend-ible and assignable. Under such circumstances there is no inference to be drawn except of an intent to pass a vendible and assignable estate.

It was contended on the argument that the word " forever " in this clause tended to the same construction reached by Mr. Zabriskie. But, although this word often operates to indicate an intent to create a fee simple, yet it will not operate to cre-ate or impede the creation of an estate tail. Such was the view of C. J. Ewing in *Den* v. *Cox,* 4 *Halst.* 10, and the cases there cited, and many others sustain that view. In *Ver-non* v. *Wright, ubi supra,* Crowder, J., expresses the same view, and says the word would not enlarge the limitation of the estate tail, but only import its continued duration.

The result is that, in my judgment, the plain intent of tes-

tator was to create an estate which, under the statute of 13 *Edw. I.*, commonly called the statute of entails, would have been an estate in special tail.   Upon the authority of *Zabriskie* v. *Wood, ubi supra*, that estate fell within the provisions of section 11 of the Descent act, and became an estate for life in M. V. D. C., the devisee, with remainder to his children in fee simple.   See also *Redstrake* v. *Townsend*, 10 *Vroom* 372.

It was suggested on the hearing that there might be a question under section 11 as to the amount of estate to which plaintiff would be entitled.   He is one of seven children of M. V. D. C. by his wife, Sally Ann.   M. V. D. C. had a child by a previous wife.   If the last-named child obtains an interest under section 11, it is plain that the intention of the testator is not regarded.

But the question is not before me, because plaintiff only claims *one-eighth* of the land.   If before me, the case of *Zabriskie* v. *Wood, ubi supra*, settles it, for in that case the statute was so construed as to cast the devised estate upon a child to whom it was the evident intent of the testator that the estate should not pass.

I am, therefore, constrained to find for the plaintiff, and that he is entitled to judgment for the lands claimed, &c., and his costs of suit, &c.

A writ of error was brought to remove the judgment and proceedings to this court.

For the plaintiff in error, *Geo. O. Vanderbilt* and *W. D. Holt.*

For the defendant in error, *James B. Vredenburgh.*

PER CURIAM.

The judgment in this case should be affirmed, for the reasons given by the court below.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, MCGREGOR. 13.

*For reversal*—None.