ENOKA AKO *v.* WILLIAM H. RUSSELL AND
KOSHIRO TOFUKUJI.

No. 2097.

SUBMITTED JUNE 17, 1933.                    DECIDED AUGUST 12, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE DAVIS
IN PLACE OF PARSONS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY BANKS, J.
(Circuit Judge Davis, dissenting.)

This is an original submission under the statute on an
agreed statement of facts. On June 14, 1910, Malia
Russell, who was then the owner in fee of a certain parcel
of land situate in Honokaa, Island of Hawaii, executed
the following deed: "This indenture made this 14th day
of June, A. D. 1910, and between Malia Russell of

Honokaa, Hamakua, County and Territory of Hawaii, of the first part, and Enoka Ako of Honokaa, Hamakua aforesaid, of the second part, witnesseth, that the said Malia Russell as well for and in consideration of the love and affection which she has and bears towards the said Enoka Ako as for the sum of one dollar to her in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, doth give, grant, bargain, sell, convey and confirm unto Enoka Ako and his heirs and assigns forever all that piece or parcel of land situate at Honokaa; same being those premises conveyed to William Russell, deceased, by deed of Maria Margarida Hardey and Manuel Hardey, of record in the Registry of Conveyances in Honolulu in Liber 286 and on pages 184-185, containing an area of 1.6 acres.

"To Have and to Hold the same granted premises with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining unto Enoka Ako, his heirs and assigns forever: With These Conditions However, that the said Enoka Ako shall collect and pay over to the party of the first part as long as she lives, all rents, issues, profits, and proceeds arising therefrom as they become due. And after the termination of the life of the party of the first part, then the said rents, issues, profits and proceeds, after the payment of expenses on said premises, shall be divided and paid pro rata among the party of the second part, Henry J. Kalawaia, William H. Russell and George Russell or their heirs and assigns forever."

After the execution of this deed Henry J. Kalawaia, one of the grantor's sons mentioned therein, mortgaged the interest he acquired by that instrument to one Koshiro Tofukuji. This mortgage was foreclosed and by the foreclosure the mortgagee acquired the interest the mortgagor had in the property. George Russell, another son, also

transferred his interest to Tofukuji. William H. Russell, still another son, has retained his interest. Enoka Ako, a fourth son, claims that by the deed he acquired a fee simple title to the entire property. The controversy therefore is between Ako on the one hand and Tofukuji and William Russell on the other.

The disagreement of the parties arises out of the construction of this deed. It is contended by Ako, the plaintiff, that Malia Russell, the grantor, conveyed to him for his own use and benefit a fee simple estate in the land described, and that by the first condition, namely, "That the said Enoka Ako shall collect and pay over to the party of the first part as long as she lives, all rents, issues, profits, and proceeds arising therefrom as they become due," she merely reserved to herself a life interest. He also contends that the second condition in the deed, namely, "And after the termination of the life of the party of the first part, then the said rents, issues, profits and proceeds, after the payment of expenses on said premises, shall be divided and paid pro rata among the party of the second part, Henry J. Kalawaia, William H. Russell and George Russell or their heirs and assigns forever," is so repugnant to the prior portions of the deed which convey to him a fee simple estate that they both cannot stand and the second condition is therefore void.

If plaintiff's construction of the deed were the only one of which it is reasonably susceptible there would be much force in this contention. It must be presumed of course that the grantor did not purposely express conflicting intentions. It therefore becomes our duty to examine the entire instrument with the view of ascertaining whether the second condition is in reality repugnant to the granting and habendum clauses or whether it is consistent with them. The rule of construction is thus stated in 18 C. J. p. 330, § 327: "In determining the

estate created by a deed, the court will, under the modern rules of construction now generally adopted, consider the deed as a whole, without regard to its formal division into parts, the position of its different clauses, or the technical accuracy of the language employed, the purpose sought being to effectuate the intention of the grantor, as gathered from the entire instrument, where it is not contrary to established principles of law." This rule is recognized in this jurisdiction in the following cases: *Nahaolelua v. Heen,* 20 Haw. 372; *Simerson v. Simerson,* 20 Haw. 57; *Kaleialii v. Sullivan,* 23 Haw. 38; *Keelikolani v. Crown Land Commissioners,* 6 Haw. 446; *Kuuku v. Kawainui,* 4 Haw. 515. See also *Ihihi v. Kahaulelio,* 263 Fed. 817.

It is apparent from the granting clause of the deed that the grantor intended to convey the legal title to Ako. It is equally apparent from the first condition that she intended to reserve to herself during her life the beneficial interest in the property, empowering Ako to collect the rents, issues, profits and proceeds and pay them over to her. The effect of this was to separate the legal title from the beneficial interest, the former being in Ako and the latter in the grantor. It is also apparent from the second condition that the grantor intended that the property should after her death, which would terminate her equitable interest, go in equal shares to her sons Ako, Henry J. Kalawaia, William H. Russell and George Russell, and their heirs and assigns forever.

Construing the deed as a whole we think it places no undue strain upon the language employed to say that it indicates an intention on the part of the grantor. to create a trust in which Ako is the trustee and she is the beneficiary, with remainder over after her death to Ako and her other three sons. This conclusion harmonizes the several clauses of the deed and disposes of the plaintiff's

contention. It has been often said that no particular words, such as "trust," "trustee" or "beneficiary" are essential to the creation of a trust if without their use the intention to create a trust is nevertheless sufficiently manifest. In *Colton* v. *Colton*, 127 U. S. 300, the court expressed itself as follows (p. 310) : "The object, therefore, of a judicial interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed. These rules of construction, indeed, apply to every written instrument, although in deeds and some other formal documents the long usage of the law has, in certain cases, required the use of technical words and phrases to accomplish particular effects. No technical language, however, is necessary to the creation of a trust, either by deed or by will. It is not necessary to use the words 'upon trust' or 'trustee,' if the creation of a trust is otherwise sufficiently evident. If it appear to be the intention of the parties from the whole instrument creating it that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title, if it be capable of lawful enforcement. No general rule can be stated that will determine when a conveyance will carry with it the whole beneficial interest, and when it will be construed to create a trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument."

Another contention made by the plaintiff is that if the first condition creates a trust in favor of the grantor the second condition likewise creates a trust in favor of her sons, their heirs and assigns forever, and that if this

be true it violates the rule against perpetuities. The two conditions, however, are not similar and are easily distinguishable. In the first condition the trust is created by the conveyance of the legal title to Ako with certain powers and corresponding duties to be exercised and performed for the use and benefit of the grantor.

There is, however, nothing in the second condition which indicates an intention on the part of the grantor that the legal title already granted to Ako shall be retained by him after her death for the benefit of his three brothers. He is given no power after the happening of this event to collect the rents, income, profits and proceeds derived from the land and divide the net remainder between himself and his three brothers. In fact none of the duties or obligations of a trustee are imposed upon him either expressly or by implication. On the contrary, the condition provides that upon the grantor's death the usufruct shall be divided in equal proportions among her four sons. This clearly indicates the intention not to continue the trust created by the first condition, merely changing the beneficiary, but to give the usufruct in equal parts to her four sons after her death. There is nothing in this condition or elsewhere in the deed which justifies the inference that each of the four sons was entitled to a pro rata share of the income for his life only, or that in the event of the death of one or more of the sons the whole income should go to the survivor or survivors, thus increasing his or their portions, or that upon the death of the last survivor of the four sons the land should revert to the heirs of the grantor or vest in the heirs of Ako. The effect of the second condition was to convey to these four sons a fee simple estate in remainder in the land itself.

It is well settled in this jurisdiction and elsewhere that a gift of the rents, issues and profits to be derived from land is a gift of the land itself unless a different

intention appears. (*Hapai* v. *Brown*, 21 Haw. 499, 505; *Christian* v. *Waialua Agr. Co.*, 31 Haw. 817, 910; *Green* v. *Biddle*, 21 U. S. [8 Wheat.] 1; 2 Tiffany, Real Prop., § 441.) In *Green* v. *Biddle, supra,* the court said (p. 74): "A right to land essentially implies a right to the profits accruing from it, since, without the latter, the former can be of no value. Thus, a devise of the profits of land, or even a grant of them, will pass a right to the land itself. Shep. Touch. 93; Co. Litt. 4 b. 'For what,' says Lord Coke, in this page, 'is the land, but the profits thereof.'" There is no different intention apparent in the instant case.

There is another phase of this case which requires consideration. It appears from the record that on October 29, 1928, Malia Kimura, nee Malia Russell, executed another deed which purported to convey to Ako in fee simple the property in question. At this time the grantor, as we have seen, had only a beneficial interest. This then was the only interest she could convey. She was powerless to divest the estate in remainder already conveyed to Henry J. Kalawaia, William H. Russell and George Russell. The only effect of this second deed, therefore, was to convey to Ako a right to the rents, income and profits of the land as long as the grantor lived. Upon her death, as we construe the second condition in the first deed, Ako and the two defendants will as joint owners of the fee simple estate be entitled to possession.

Judgment in accordance with this opinion will be signed upon presentation.

*H. Irwin* for plaintiff.

*W. H. Smith* for defendants.

### DISSENTING OPINION OF CIRCUIT JUDGE DAVIS.

I respectfully dissent. The deed (Exhibit "A") presented for interpretation clearly expresses an intent to

create and vest in the grantee a fee simple title in the land described therein. The usual and proper words in conveyancing for the creation and vesting of a fee simple title appear in both the granting and habendum clauses of this deed. The grant is to "Enoka Ako and his heirs and assigns forever." The habendum is "To Have and to Hold * * * unto Enoka Ako, his heirs and assigns forever." Thus the paramount or ruling intent clearly and legally expressed in both the granting and habendum clauses of this deed is the creation of and vesting in the grantee, Enoka Ako, a fee simple title.

Appended to the habendum clause is a condition as follows: "With These Conditions However, that the said Enoka Ako shall collect and pay over to the party of the first part as long as she lives, all rents, issues, profits and proceeds arising therefrom as they become due, And after the termination of the life of the party of the first part, then the said rents, issues, profits and proceeds, after the payment of expenses on said premises, shall be divided and paid pro rata among the party of the second part, Henry J. Kalawaia, William H. Russell and George Russell or their heirs and assigns forever."

The question for decision may be thus stated: How far do or can the words of this condition legally cut down or modify the fee simple title previously created in and by the granting and habendum clauses? The answer to this question will depend largely upon the legal effect and meaning of the words of this condition.

In its literal form this condition would indicate an intent to create a condition subsequent. That it cannot be so construed in this jurisdiction, because there are no words in the deed giving a right of reentry or declaring a forfeiture, is well settled. See *Kekuke* v. *Keliiaa,* 5 Haw. 437, 438; *Spooner* v. *Rice,* 11 Haw. 41.

Also a construction, following *Spooner* v. *Rice,* giving

this condition only the force of a contractual obligation binding on the grantee personally would tend rather to defeat than to effectuate the intent expressed. The death of the grantee before the grantor or before the time of fulfillment of the second part of the condition would prevent the carrying out of the condition. The grantee's heirs are not mentioned as bound by the condition. See *Kekuke* v. *Keliiaa, supra,* p. 440.

The majority opinion attempts to solve the difficulty by the implication of a trust. If this case is a proper one for the creation of a trust by implication or construction, then the trust should be applied to the whole condition and not to the first part only. The condition is not divisible. If the words used show or express an intent to create a trust, then such trust must operate upon the entire condition. A construction, which separates this condition into two parts and holds that as to the first part (reservation of life interest in the grantor in the rents, etc.) a trust was intended and created and as to the second part (reservation of an interest in grantee and his three brothers in the rents, etc.) no trust was intended or created, is highly artificial to say the least. Such construction seems to violate well established canons of construction; such, for example, as that all the words of the clause or condition are to be considered in their grammatical sense and natural relation in ascertaining the intent. See *O'Neil* v. *Dreier,* 61 Fed. (2d) 598; *Hinds* v. *Hinds,* 140 Atl. 189; *Davis* v. *Harrison,* 240 Fed. 97; 18 C. J. "Deeds" § 380, pp. 362-363; *Moe* v. *Gier,* 2 Pac. (2d) 852, 854-855; *Marsh* v. *Marsh,* 158 S. E. 400, 200 N. C. 746; R. L. 1925 §§ 10, 11.

The implied trust construction of the majority opinion is not justified. The court is presented with a deed or conveyance for interpretation or construction. This instrument should be given effect as a legal deed or con-

veyance simply rather than as a will or trust deed testamentary in character. It is only in the event that the court cannot give effect as a simple legal deed so as to carry out the intent therein expressed by its wording, that an attempt to construe it as a trust deed testamentary in character may be resorted to. "It is elementary that an instrument intended to operate as a deed should so operate if it is not legally impossible for it to do so. This rule applies even though the instrument is indefinite and admits of two constructions and an interpretation which will give the deed force will be adopted in preference to one which will make it of no effect. Where the conveyance cannot operate in one form it will be held to operate in that form in which by law it will effectuate the intention of the parties. (18 C. J. 256.)" *Moranho* v. *DeAguiar*, 25 Haw. 267, 269. See also *Magoon* v. *Lord-Young Engineering Co.*, 22 Haw. 327, 336-337; *Kahui* v. *Lauki*, 5 Haw. 296; *Keliiilihune* v. *Vierra*, 13 Haw. 28; *Puukaiakea* v. *Hiaa*, 5 Haw. 484; *Keliikanakaole* v. *Kawaa*, 5 Haw. 134.

Can this deed be given a legal construction so as to operate simply as a valid deed without resort to artificial rules of construction by which a trust or trusts are found therein by inference and implication? I believe so. Why should a trust be found by implication when there are no express words in the deed ordinarily used to create a trust? The absence of these usual and ordinary words of trust creation such as "in trust nevertheless," "upon trust," "my trustee," etc., argues very strongly against the trust theory of construction. See *St. James' Parish* v. *Bagley*, 138 N. C. 384, 50 S. E. 841, 70 L. R. A. 160.

"There is a simple, sure, and familiar form of bequest to raise a trust, which consists of a devise to the legatee in trust to the beneficiary, and the failure to use it has been held to indicate an intention

to avoid the creation of a trust. As remarked in one case: 'It certainly seems singular that a testator, having a full and settled intention to create a trust (for that is what must be read on the face of the will or no trust can exist), should adopt a mode which at best appears to be a mere suggestion or inference, instead of employing the familiar method and creating the trust by an express declaration.' " Note 49 A. L. R., pp. 34-35, citing *Burnes* v. *Burnes* (1905), 70 C. C. A. 369, 137 Fed. 781; *Pratt* v. *Sheppard & E. P. Hospital* (1898), 88 Md. 610, 42 Atl. 51, 4 Am. Neg. Rep. 641; *Van Duyne* v. *Van Duyne* (1862), 14 N. J. Eq. 397; *Heneage* v. *Andover* (1822), 10 Price 230, 147 Eng. Reprint 297.

Keeping in mind the rule with regard to *deeds* as distinguished from *wills,* there is much more significance to the grantor's failure in the instant case to use the simple, sure, familiar and usual words to create a trust than would be the case were the court construing a will.

"But ordinarily less latitude is allowed in the construction of deeds than in the construction of wills." 18 C. J. "Deeds" § 197, p. 252, and cases in note 28. See also *Venis* v. *Talbert,* 131 N. E. 424, 425. "Courts go much further in stretching the language of a will than of a deed in order to give effect to the intention." *Kellett* v. *Sumner,* 15 Haw. 76, 97. And see *Chater* v. *Carter,* 22 Haw. 34, 49. Also the rule that estates by implication are not favored should be kept in mind and given force and effect. See *Kellett* v. *Sumner, supra,* 76, 97, and *Chater* v. *Carter, supra,* 48, 49.

As to the first reason against the trust theory by implication, that is, that there are no express words creating a trust in the deed or its condition, there are very few cases where trusts by implication are created where private rights and property are conveyed for private purposes and uses as distinguished from conveyances of property for

public or charitable purposes or uses. "It is now fully recognized that gifts to charitable uses are to be highly favored, and will be most liberally construed in order to accomplish the intent of the donor, *and trusts for such purposes may be established and carried into effect where, if not of a charitable nature, they could not be supported.*" (Italics ours.) 26 R. C. L. "Trusts," § 99, p. 1252 and cases in note 16.

The conveyance here in question is not of a public or charitable nature. Here, if a trust is to arise, the intent to create a trust must be found by inference from the language of the condition (powers conferred) in relation to the language of the entire deed. In looking for indications of such intent to create a trust not clearly expressed, the fundamental rules of construction must be kept in mind. "There can be no trust if there is no intention to create one, and therefore the first and great rule of construction, to which all other rules must yield, is that the intention of the grantor shall prevail, provided it be consistent with the rules of law. The rule includes the propositions that the intention must be found in the instrument itself; that where the language of the instrument is unambiguous and perfectly clear, there is no field for the play of construction; that where the maker of the instrument has clearly expressed one intention, the court cannot impute to him another; that the intention which clearly appears must be lawful." 26 R. C. L. "Trusts," § 100, pp. 1252-1254. See also 26 R. C. L. "Trusts," § 18, pp. 1180-1182.

As remarked by Mr. Justice Pitney in *Chater* v. *Carter*, 59 L. Ed. 1462 at 1470: "The guiding principle must be, to seek the intention of the settlor. We mean, of course, his intention as expressed. Not, what did he intend to say? but, What did he intend by what he did say? must be the test."

That the grantor did not intend to create a trust or express such intent in and by her deed (Exhibit "A") I believe is clear because: (1) The deed is drawn in the form of an indenture which fact would indicate an intent to create a contractual relation between herself and the grantee, rather than a trust relationship. (2) There are none of the usual words employed to create trusts. (3) The express words used would indicate an intent *prima facie* to create a condition subsequent rather than a trust. (4) This instrument is in the form of a deed and can and should be given effect as such.

The majority opinion, by judicial construction, converts this deed into a trust deed testamentary in character and entirely disregards the legal meaning of the words. "or their heirs and assigns forever" contained in the second part of the condition.

After a careful and learned discussion of the authorities, Shope, Ch. J., in *Ebey* v. *Adams*, 10 L. R. A., 162 at 165, says: "The words 'heir' or 'their heirs' are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person, or particular persons, who may stand in that relation at the happening of a certain event, or at a certain period, and not to the whole line of heirs in succession. No one can have heirs while living. The word 'or,' therefore, as here used, indicates substitution; and the payment or distribution is to be made at a fixed period, i. e., upon the sale by the executors, after the termination of the intermediate estate. It would seem clear, therefore, that the persons who are to take are such of the children as might be living at the time of the distribution, and the heirs of such as might have predeceased. It follows, when this language is considered in connection with the context, that there was

here created an alternative devise. Such of the children as were living at the time of the distribution would take, and such persons as would fall under the designation of 'heirs' of such as had predeceased would take the share or portion that their ancestor would have taken if living. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution. In other words, time is of the substance of the gift, and related to the vesting of the legacies in interest, as well as in possession. It being shown that the daughter of the testator (Elmira Lewis) died before the termination of the intermediate estate, leaving heirs, it follows from what has been said that she took no interest under the will; but the persons standing in relation of heirs to her, upon the termination of such estate, took under the will, and as purchasers, the share she would have taken had she survived that period. Having no interest in the estate, she could by her conveyance or assignment transfer none."

The decided weight of authority is to construe the words "or their heirs and assigns" as words of purchase or substitution and not as words of limitation in such cases as the instant one where there is no express intent to the contrary in the other language used. *Evans* v. *Bishop Trust Co.,* 21 Haw. 74, 78; *In re Evans' Will,* 136 N. E. 233; *Gilmor's Estate,* 35 Am. St. Rep. 855; *Janney* v. *Sprigg,* 48 Am. Dec. 557 and note; *Defrees v. Brydon,* 114 N. E. 336; *Bender* v. *Bender,* 134 Am. St. Rep. 1088; Kales, Estates, Future Interests, 2d Ed., §§ 170-176, pp. 171-176; *In re Brolasky's Estate,* 153 Atl. 739, 741.

Now as to the word "forever;" it cannot have the legal effect of altering or enlarging the meaning of the words "or their heirs and assigns." "The use of the word 'forever' in the granting or habendum clause of a deed does not generally have the effect of enlarging the estate

granted; and, if the instrument as a whole shows that a fee-simple title was not intended to be granted, the title will not be enlarged into a fee simple by the grantor's declaration that it is to be held by the grantee 'forever.' Watson v. Wolff Co., 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540; Johnson v. Barden, 86 Vt. 19, 83 Atl. 722, Ann. Cas. 1915A, 1243; McMillan v. Hughes, 88 S. C. 296, 70 S. E. 804; Guild v. Mayor, 87 N. J. Eq. 38, 99 Atl. 120; McClelland v. McClelland, 132 Ky. 284, 116 S. W. 730." *Houston Oil Co. of Texas* v. *Bunn,* 209 S. W. 830, 834.

"So it may be said that the rule of construction laid down in these cases will govern in the case at bar unless the addition of the phrase 'and assigns forever' to the words 'bodily heirs' has the effect to make the estate to Martha Florence by the deed an estate in fee simple. The word 'forever' is one of time; but the term relates to the person to whom the property is given, and not the estate granted. If the words 'bodily heirs' are presumed to have been used by the grantor in their legal sense, so the word 'forever' will be presumed to have been likewise used; and if it relates to the person, and not to the property, it cannot serve to either add to or take from the estate granted by the former words 'bodily heirs;' and the use of the words together does not enlarge the estate to a fee simple. In Williams on Real Property (17th Ed.) p. 178, it is said that the words 'and assigns forever' have no conveyancing virtue at all, but are merely declaratory of the power of alienation which the purchaser possesses without them. And in the case of Pollock et al. v. Speidel, 17 Ohio St., at page 446, the court said that the use of the word 'assigns,' in the connection in which it was used in the present case, 'only imports that the estate granted may be transferred, and cannot operate to enlarge the grant, or defeat its express limitations.' To the same

effect, see *Weart* v. *Cruser,* 49 N. J. Law, at page 479, 13 Atl. 36, and cases cited; Corbin v. Healy, 20 Pick. (Mass.) 514; Hall v. Vandergrift, 3 Bin. (Pa.) 374; Lessee of Wright v. Scott, 4 Wash. C. C. 16, Fed. Cas. No. 18,092; Dennis v. Wilson, 107 Mass. 591, where it is held that the term 'forever' does not import inheritable qualities; Haynes et al. v. Bourn, 42 Vt., at page 691." *Watson* v. *Wolff-Goldman Realty Co.,* 128 S. W. 581, 582. See also *In re Rosenbledt,* 24 Haw. 298, 303-304.

From the above it necessarily follows that the proper legal construction of the deed is as follows: (1) The grantee, Enoka Ako, takes a fee simple title to the land deeded. (2) Subject however to a life estate reserved to the grantor under the first part of the condition. (3) And subject further by the second part of the condition to a life estate, *pur autre vie,* to take effect in enjoyment after the death of the grantor, in the grantee and his three brothers as tenants in common with right of substitution in the heirs of the grantee and his three brothers up until the termination of said life estate *pur autre vie,* i. e., at the death of the last survivor of said grantee and his three brothers.

The question now arises as to whether the above limitation of a life estate *pur autre vie* in the grantee and his three brothers with right of substitution in their heirs after the grant of a fee to the grantee in the granting clause of the deed is valid or invalid because of repugnancy, conflict or inconsistency. In effect such a limitation operates to cut down the fee in the grantee to a mere life estate in an undivided one quarter of the land deeded to him with remainder in fee to his heirs. Such a limitation is clearly repugnant to and in conflict with the paramount or ruling intent expressed in both the granting and habendum clauses to vest a fee simple title in the grantee. A clear grant of a fee to the grantee cannot

be legally cut down to a mere one quarter life interest plus a remainder in fee to his heirs by a condition attached to the habendum clause. The well settled rule in this jurisdiction prevents this. "Touching the language found in the deed immediately following the habendum, should it be conceded that such language indicates the intention of the parties that the grantees should take a life estate only, with remainder over, we are of the opinion that the attempt to so limit the absolute grant is null and void because utterly inconsistent with both the granting and habendum clauses of the conveyance. *Simerson* v. *Simerson,* 20 Haw. 57; *Nahaolelua* v. *Heen,* 20 Haw. 372, 377; *Ray* v. *Spears' Ex'r.,* 64 S. W. 413." *Kaleialii* v. *Sullivan,* 23 Haw. 38, 44-45 (affirmed 242 Fed. 446).

"There is an absolute conflict and utter repugnancy between the granting clause and the habendum. We need not go further than our own decisions to determine the effect of the deed under such conditions. Owing to repugnancy between them the premises or granting clause controls (*Simerson* v. *Simerson, supra*), and all later provisions that are repugnant to the granting clause are inoperative (*Simerson* v. *Simerson, supra; Kaleialii* v. *Sullivan, supra; Kahaulelio* v. *Ihihi, ante,* p. 292)." *In re Rosenbledt,* 24 Haw. 298, 305. See also 18 C. J. "Deeds" § 326, p. 330 and cases in note 8; *Hicks* v. *Sprankle,* 257 S. W. 1044, 1045; *Hammond* v. *Hammond,* 84 A. L. R. 1050 and note at 1054-1078.

It would seem from the above that the holding of the majority opinion is in conflict with and not sustained by the settled law of this jurisdiction. It seems to me that, under our decisions with reference to estates in real property where the doctrine of *stare decisis* applies with peculiar force, it is well settled that in a deed granting a fee to A and his heirs habendum to A, B, C and D and their heirs the habendum conflicts with the granting

clause and A takes the fee, B, C and D taking nothing. The result of the majority opinion is that a mere condition attached to the habendum overrides both the granting and habendum clauses and the clear intent therein expressed to grant the fee to A and vests the fee in A, B, C and D as tenants in common. The plaintiff, Enoka Ako, should have a decision and judgment in his favor under the submission, he having acquired the life estate reserved by the grantor, his mother, as a result of a subsequent deed (Exhibit "B").

The attempted reservation of a life estate *pur autre vie* to the three brothers of the grantee in the second part of the condition is also clearly void as a matter of law because they are strangers to the deed. See 18 C. J. "Deeds" § 339, p. 342 and cases in notes 6 and 7.