## COOKE v. UNITED STATES
(three cases).

## SPALDING v. UNITED STATES.
Civ. Nos. 996–999.

United States District Court
D. Hawaii.
Nov. 2, 1953.

Anderson, Wrenn & Jenks, Heaton L. Wrenn and Marshall M. Goodsill, Honolulu, Hawaii, for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Lester L. Gibson, Andrew D. Sharpe, J. P. Garland, Erwin A. Goldstein, John W. Hussey, Spec. Assts. to the Atty. Gen., A. William Barlow, U. S. Atty., Honolulu, Hawaii, for defendant.

McLAUGHLIN, Chief Judge.

These four cases were consolidated because identical issues arise out of the fact that gifts of shares of stock in C. M. Cooke, Ltd. were made to the various plaintiffs in 1935. The nature of the interest of each plaintiff is determined by a deed of gift, all being substantially similar in form, but executed by different donors to the several plaintiffs, and differing in that the number of shares given to each donee was not the same. The corporation dissolved in December of 1942, having as its assets stock in various Hawaiian corporations. On dissolution the assets were distributed in kind to the holders of its shares (except for one cash item); these assets had increased in value subsequent to March 1, 1913, resulting in a long-term capital gain, the amount of which varied in each case in proportion to the number of shares originally owned by each stockholder.

The plaintiffs continued to hold these assets after the dissolution; there were exceptions to this, in which the original stocks were sold and the proceeds reinvested in other corporate securities. Other exceptions existed where stock splits or reorganizations resulted in the issuance of new shares in exchange for the old. In these instances the replacements have been held under the same restrictions as imposed on the original subject of the deed of gift. If cash dividends have been received, they have been used by each plaintiff as his own, as provided in the deed of gift.[1]

On dissolution there was some doubt as to whom the gain would be chargeable for the purpose of paying the income tax thereon. The gain was reported by each taxpayer on his individual tax return, but each denied liability therein as an individual. Each filed a fiduciary return also, reporting the gain, and paying the amount of the tax thereon, while

1. The deed of gift in each case provided as follows:
   "Know All Men By These Presents: That I, Richard A. Cooke, of Honolulu, Hawaii, in consideration of natural love and affection, hereby transfer and assign all of the following described property—
   "2,000 shares of the capital stock of Charles M. Cooke, Limited to my wife, Dagmar S. Cooke, to have and to hold the same to my wife for the term of her natural life, with the right to use all income therefrom, and after her death the remainder in equal shares to those who shall survive my wife of our children and of the issue of any of our children who shall predecease my wife, such issue taking per stirpes by right of representation, their heirs and assigns forever.
   "My said wife shall have full authority to sell, transfer, and exchange said property and to reinvest the proceeds and to manage and control said property, reinvestments and proceeds, and to exercise all rights and power of ownership with respect thereto. The proceeds and all reinvestments shall likewise be subject to a life interest in my said wife with remainder over as aforesaid. My said wife shall hold said property during her life without impeachment for waste and shall not be required to give any security for the safekeeping or preservation of the same. No person purchasing from or otherwise dealing with my wife shall be liable to see to the application by my wife of the proceeds of any sale or to the propriety of any other action taken by my wife. The above described property and any other shares of stock in which my wife may have a life interest pursuant to the provisions hereof shall be issued or registered in the name of my said wife as life tenant and shall be subject to transfer pursuant to the sole assignment or endorsement of my wife; and all corporations issuing such stock and transfer agents and registrars therefor shall permit transfers thereof pursuant to assignment or endorsement thereof by my wife. My wife shall have full right during her life to vote any such shares of stock in which she shall have a life interest as aforesaid, upon all questions and matters which may come before meetings of stockholders of corporations issuing such stock, whether relating to the ordinary business of such corporations or otherwise, including specifically but without limitation of the generality of the foregoing, amendment of articles of association, amendments of by-laws, increases and decreases of capital stock, and dissolutions. All stock dividends and rights to subscribe shall be treated as principal and all cash dividends, whether regular or extraordinary, unless paid out of capital, shall be treated as income."

asserting his belief again that he was not liable to pay the tax as a fiduciary.

Claim for refund was filed within the statutory period; this refund was denied by the Collector on the ground apparently that a trust was created by the deed of gift, and that the fiduciary return and payment was proper. This action followed, and is in this court because the Collector to whom the tax was allegedly erroneously paid is dead and therefore not in office. Thus the court has jurisdiction as alleged under 28 U.S.C. §§ 1331, 1340, and 1346.

Quite often the question of who is to pay a tax on a capital gain is easily answered, since ownership of the rights in the property sold will be found in one person, either in his own right, or as a trustee. Both of these situations have been dealt with in considerable detail in pertinent sections of the Internal Revenue Code, 26 U.S.C. §§ 22(a), 115, 161(a). Such legal owner has the duty of discharging the tax liability on capital gains, under the basic rule that the tax is laid upon him who owns it, or owns the property producing the income, Poe v. Seaborn, 1930, 282 U.S. 101, 51 S. Ct. 58, 75 L.Ed. 239, or otherwise upon him who earns it, Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. Generally, legal ownership is sufficient to justify imposition of the tax, even though such legal ownership is subject to equitable obligations to a trust beneficiary. 26 U.S.C. § 161(a). Certain exceptions to this rule exist by statute, 26 U.S.C. §§ 166, 167, and by judicial interpretations, Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L. Ed. 788. These exceptions are applicable to tax the income from property of one who has *had* title, and has transferred it while retaining substantial incidents of ownership. They do not seem applicable to one in the position of this plaintiff, who never has, and never will under this deed, obtain the benefit of ownership of the gain in question, except for his right to take what income the gain itself produces.

Thus the essential question in this action is whether or not a trust was created by the deed of gift to make the life tenant a trustee for contingent remaindermen and justify exacting the tax from him as a fiduciary under authority of 26 U.S.C. § 161(a).

Under the common law, a division of the fee into life estates and remainders creates interests which are legal estates of present ownership, and not inconsistent with each other because possession of the remainder is postponed. 31 C.J.S., Estates, §§ 34, 85. The identity of the remainderman may be uncertain for any length of time up to the death of the life tenant, although by strict common-law rules he must be available to take possession at that moment in order to avoid destruction of his interest. 31 C.J.S., Estates, § 91. To this extent, at least, it has long been possible to have a contingency in the legal ownership of a remainder. 31 C.J.S., Estates, § 71. The general rules relating to life estates and remainders as developed in real property have been extended to personalty, so that generally there may be estates for life and remainders in personalty. Damon v. Dickson, 1889, 7 Haw. 694; Warfield v. Bixby, 8 Cir., 1931, 51 F.2d 210; 2 Restatement of Property, Introductory note to Division III, Topic 2, Protection of Future Interests, pp. 816, 817.

As to the location of title to the contingent remainder, some authorities rationalize that under common law, the estate passes immediately out of the grantor to remain "in abeyance", awaiting the contingency which, if it results favorably, vests the estate in the remainderman, and if it does not so vest, the grantor or his heirs may re-enter. Others more sensibly hold that the inheritance remains in the grantor or his heirs pending the contingency. 31 C.J. S., Estates, § 81. Whatever theory might be followed in this Territory (apparently the local policy is unstated at present), by neither interpretation would the legal estate of the remainder-

man be found in the life tenant. He therefore could not qualify as a trustee.

As to the remaindermen who may eventually qualify to take the capital, the condition of survivorship attached, and the possibility that there will be no qualifying remaindermen surviving the life tenant, affords us no method of determining the present identity of the eventual takers until the time of termination of the life estates. Since in all these cases the life tenants are now living the determination, *as of the time the gains were realized in 1942,* of the identity of the owners of the remainders to which the gains will eventually accrue is impossible.

It is argued that a life tenant may be considered a trustee for remaindermen, and charged as such for payment of income taxes on gains resulting to the remainder. It is true, apparently, that an express trust may make an individual both a beneficiary and a trustee for other beneficiaries. 1 Bogert, Trusts and Trustees, 1951, pp. 551, 552; 1 Scott, Trusts, 1939, pp. 524, 525. However, a life estate in personalty can be created without the intervention of **a** trustee, and in order to distinguish this legal estate from a trust we look for indications of intent to create a trust; such an intent may be found in words of the grantor imposing duties upon the grantee to hold or act for the benefit of another. Ako v. Russell, 1933, 32 Haw. 769; 1 Bogert, Trusts and Trustees, pp. 289, 293, 294 (1951). This is the relationship which, among other commonly known fiduciary positions, has been dealt with by 26 U.S.C. § 161(a) which imposes the duty to pay income taxes upon a trustee.

Furthermore, we think the addition of broad powers of management, disposition and reinvestment, per se, does not have the effect of imposing fiduciary duties, even though the net result is that the life tenant can do substantially everything a trustee of the same property could do as far as power over the property is concerned. Here again, the trust depends for its existence upon an indication of intent that a trust should exist, with its fiduciary *duties* as distinguished from rights or powers. Ako v. Russell, supra, 32 Haw. at page 773. It does not seem possible that the imposition of duties can be implied from provisions of a grant which relieve the grantee from responsibilities, or grant him additional powers only.

Nor do we think the trust relationship, with its fiduciary obligations, is imposed by operation of law upon any legal life tenant in favor of the remainderman as beneficiary. The basic restrictions of the law against certain possible actions of the life tenant are aimed solely at the goal of reasonable assurance to the remainderman of the enjoyment of his estate at the proper time. It is true that some authorities have used unfortunate language involving the words "trust", "quasi-trust" or "weak fiduciary nature" in describing this generally negative duty not to destroy the remainderman's property. However, the better authority is said to be that the restrictions on the life tenant in respect to waste are not sufficient to create a trust. 1 Bogert, Trusts and Trustees, 1951, p. 214 et seq. The point becomes more clear when we realize that even authorities using the term "quasi-trustee" when referring to a life tenant held that such a life tenant might deal with the remainderman at arm's length in purchasing or acquiring the remainder interest. Warfield v. Bixby, 8 Cir., 1931, 51 F.2d 210; Mallett v. Hall, 1930, 129 Me. 148, 150 A. 531.

In the instrument before us, we find the grant of powers and the exculpations to be entirely in the field of addition of privileges or rights in dealing with the substance of the gift, and not in any way an imposition of duties and obligations. We think they indicate the absence of any intent to impose obligations upon the life tenant which would create a trust, and we believe the local courts would find no trust existing here, were this instrument placed before them for construction of rights thereunder.

Of course the reading of the deed does suggest the existence of a strong obliga-

tion upon the life tenant to care for this estate assiduously. However, the terms discussed above make this obligation almost entirely a moral one; apparently the only things the life tenant will be subject to liability for doing are taking the estate of the remaindermen as his own, or injuring their interest intentionally, and this is far from the obligation the law places upon a trustee. The legal life tenant does not hold title to the remaindermen's interest and is clearly not such a trustee as is contemplated by section 161(a) of the Internal Revenue Code. We might add that this conclusion appears to be supported by opinions of the Board of Tax Appeals, the Tax Court, and the Treasury Department itself, insofar as they have actually reached this problem. Shea v. C. I. R., 1934, 31 B.T.A. 513, indicates strongly that the usual life tenant is not a trustee for remaindermen for tax purposes; Mercer v. C. I. R., 1946, 7 T.C. 834, gives good support to this statement; DuPuy v. C. I. R., 1935, 32 B.T.A. 969, is distinguished by the fact that under the Pennsylvania law governing the property rights of the case, the life tenant was entitled to the *profits* derived from the property, and was taxable thereon as an individual, as the term "profits" was construed to include capital gains. GCM 14693, XIV–1 Cum.B. 197 (1935) dealt with legal life estates and remainders in real property which was taken by condemnation—a situation which often results in a severance of the life estates from the remainders by separate evaluation of the interests of each owner. In that case, all the parties, owners of vested interests, consented to the payment of the full value of the property to the life tenant for investment. As we read that opinion, it is to the effect that, however the tax might have been assessed against the life tenant and remaindermen as individuals, it was not properly assessed against the life tenant as a trustee at the time the gain resulted, for the entire amount. Other cases cited, such as Hart v. Commissioner, 1 Cir., 1932, 54

F.2d 848, Ferguson v. Forstmann, 3 Cir., 1928, 25 F.2d 47, and William R. Todd, 1941, 44 B.T.A. 776, are all distinguishable in that they include an additional fact, namely, that there was a commonly recognized fiduciary relationship in existence, in each case, respectively, a receiver, a trustee, and an executor under a will. The latter, Todd, though also a life beneficiary, was still actively administering the estate. Therefore, these cases do not persuade us that this life tenant is within the scope of the statute.

The result is that section 161(a) of the I.R.C. does not furnish a basis for taxing these petitioners as trustees. Since we have found no other means provided by Congress for taxing a life tenant for gains to property owned by contingent remaindermen, the plaintiffs in these cases must prevail, to the extent of their several demands, plus interest as provided by 28 U.S.C. § 2411(a), and costs as provided and limited by 28 U.S.C. § 2412 (a) and (b).

In accordance with Rule 58, Federal Rules of Civil Procedure, 28 U.S.C., let judgment enter as prayed for in the complaint.